**Junior BROWN, Petitioner–Appellant,**

v.

**James A. COLLINS, Director, Texas Department of Criminal Justice, Institutional Division, Respondent–Appellee.**

**No. 90–1475.**

United States Court of Appeals, Fifth Circuit.

Aug. 2, 1991.

Rehearing Denied Sept. 19, 1991.

Mike Brown, Clifford W. Brown, Brown, Harding, Bass, Fargason & Rice, Lubbock, Tex., for petitioner-appellant.

Charles A. Palmer, Asst. Atty. Gen., Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before GOLDBERG, HIGGINBOTHAM, and JONES, Circuit Judges.

GOLDBERG, Circuit Judge:

■ Under well settled principles of Texas criminal jurisprudence, evidence is insufficient as a matter of law if it does not conform to the jury charge given at trial. Where the jury is instructed that the defendant must be found guilty as a principal, but the evidence does not support that theory of culpability, the defendant is entitled to a judgment of acquittal *even if* the evidence is sufficient to convict the defendant as a party-accomplice. The issue presented in this habeas corpus petition is whether that nuance in Texas criminal jurisprudence is of constitutional caliber. We conclude that it is not, and therefore affirm the judgment of the district court denying the petition.

I

Appellant Junior Brown was charged with aggravated robbery in connection with an incident which took place on the morning of December 16, 1981. The indictment charged Brown with aggravated robbery alleging that Brown did:

intentionally and knowingly, acting by his own conduct and as a party with Tommy Glynn McLoud and Wesley Thomas Patterson, while in the course of committing theft of property and with intent to obtain and maintain control of said property, threaten and place Fannie Price Evans in fear of imminent bodily injury and death, *and JUNIOR BROWN did then and there use and exhibit a deadly weapon, to-wit: A firearm.*

See Tex.Penal Code Ann. § 29.03 (Vernon 1989) (aggravated robbery). The facts underlying the charge, as elicited at trial, are set forth in great detail in the opinion of the Texas Court of Criminal Appeals, and are not in dispute:

[Accomplice witness Tommy Glynn] McLoud testified that he, Wesley Patterson, and appellant met in Weatherford on December 15, 1981, and planned a robbery to take place the following morning. Appellant drove the two men by the victims' residence in a pickup truck that evening, and Patterson was instructed to return to cut the telephone line leading

to the residence. The next morning appellant drove McLoud and Patterson back to the area, and after viewing the intended target again, dropped them off "about a block up the street" from the victims' residence. McLoud and Patterson were bearded and wore blue stocking caps, or "toboggans," and appellant was clean shaven. At approximately 9:00 a.m., under a pretext of buying jewelry, McLoud and Patterson entered the residence and robbed the 84–year–old complainant and her 93–year–old husband at gunpoint of cash, jewelry, a coin collection, and other items. The couple was placed in a closet while the residence was ransacked. McLoud looked out of the living room window periodically to make sure appellant was in the vicinity, and saw appellant parked at the nearby Cherry Park. Approximately 45 minutes after they had entered the house, McLoud lost sight of appellant and he and Patterson decided to leave the residence to look for him. They failed to find appellant after walking around the neighborhood and decided to split up. McLoud walked back to Cherry Park, saw a police car, and fled into a nearby residence where he was apprehended. The complainant testified that two men entered her home on December 16, and robbed her at gunpoint. After the robbers left, she attempted to call the police but the phone line had been cut.

*Brown v. State*, 672 S.W.2d 487, 488–89 (Tex.Crim.App.1984). Critically, it is undisputed that Brown himself never used or exhibited a firearm in the course of the robbery; his role in the criminal plan was limited to serving as the get-away driver. Thus, notwithstanding the fact that Brown did not "then and there use and exhibit a deadly weapon," the indictment charged that he did.

At trial, however, the government proceeded on a theory of party-accomplice liability. The government stressed to the jury that although Brown himself did not go into the Evans' home wielding a fire-arm, he was nevertheless as guilty as his compadres who did:

> Ladies and gentlemen, Junior Brown is a smart man. He is a "wheel man." He didn't go into that house. He put as much distance between that house and what was going on as he could....

> Thank God for the rule about parties. That's all I can say. He's just as guilty if he went in there and pulled that robbery, just like I told you in voir dire; and you said that you agreed with that principal [sic] and could follow it.

Unfortunately, the court's instructions to the jury were not as clear and articulate as the prosecutor's closing remarks. Rather than tailor the "application paragraphs"[1] of the instructions to the prosecution's "party" theory, the court, without objection from the State, crafted an instruction which tracked the language of the indictment:

> Now if you find from the evidence beyond a reasonable doubt that on or about the 16th day of December, 1981, in Parker County, Texas, the Defendant, Junior Brown, did then and there intentionally or knowingly, acting by his own conduct or as a party with Tommy Glynn McLoud and Wesley Thomas Patterson, while in the course of committing theft of property and with intent to obtain and maintain control of said property threaten and place Fannie Price Evans in fear of imminent bodily injury or death, *and JUNIOR BROWN did then and there use and exhibit a deadly weapon, to-wit: a firearm,* then you will find the Defendant guilty of Aggravated Robbery, as charged in the indictment.

> Unless you find that each and every element of the offense charged as set out in the immediately preceding paragraph has been proved beyond a reasonable doubt, or if you have a reasonable doubt of any element thereof, you will acquit the Defendant of the offense of aggravated robbery and proceed to consider

---

**1.** As the name should suggest, the "application paragraphs" of the court's instructions apply the relevant law to the specific facts of the case.

whether or not the Defendant is guilty of the offense of Burglary of a Habitation.

In addition, the court instructed the jury about the law of parties:[2]

> Each party to an offense may be charged with the commission of the offense. A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible or by both. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to the crime.

*See* Tex.Penal Code Ann. §§ 7.01, 7.02 (Vernon 1989). The jury found Brown guilty of aggravated battery, and the court sentenced him to life imprisonment based on his prior criminal record.

On direct appeal, Brown's conviction was affirmed both by the Court of Appeals for the Second Supreme Judicial District, *Brown v. State*, 659 S.W.2d 499 (Tex.Ct. App.1983), and by the Texas Court of Criminal Appeals, *Brown v. State*, 672 S.W.2d 487 (Tex.Crim.App.1984). In neither appeal did Brown vigorously press the argument he now raises: that he was entitled to a judgment of acquittal because the evidence was insufficient to convict him as a principal of the offense of aggravated battery as charged in the court's instructions. He did raise, however, a challenge to the sufficiency of the evidence of the aggravated robbery charge.[3]

Brown then sought collateral relief in state court raising the argument he is pursuing in this court. The 43rd Judicial District Court of Parker County, Texas "proceeded to consider said petition" and recommended that Brown's petition for a writ of habeas corpus be denied:

> [a]fter having reviewed the pleadings and instruments on file ... the Court is of the opinion and does hereby find there are no controverted, previously unresolved issues of fact material to the legality of the Petitioner's conviction and therefore recommends that the relief requested in said petition be denied.

The Texas Court of Criminal Appeals denied Brown's application without written order.

Thereafter, Brown filed the instant action in the United States District Court for the Northern District of Texas. Upon the written recommendations of the United States Magistrate Judge, *see* 28 U.S.C. § 636(b), the court denied Brown's petition for writ of habeas corpus, and later denied Brown's motion for new trial. On appeal to this court, Brown challenges the sufficiency of the evidence presented at trial on the charge of aggravated robbery.

## II

The State contends that Brown's sufficiency claim is procedurally barred because he did not raise it on direct appeal, and therefore, his protestations should fall on deaf ears. Under Texas law, sufficiency of the evidence claims not raised on direct appeal are procedurally defaulted; they may not be raised in state collateral proceedings. *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir.1986); *Ex parte McWilliams*, 634 S.W.2d 815, 818 (Tex.Crim.App.1980), *cert. denied*, 459 U.S. 1036, 103 S.Ct. 447, 74 L.Ed.2d 602 (1982).

### A

■ We are not persuaded in the first instance that Brown failed to raise his federal sufficiency claim on direct appeal and thereby waived it. The mainstay of Brown's direct appeal was a challenge to the sufficiency of the evidence to sustain his conviction for aggravated robbery. He

---

**2.** Although Brown objected to the original party instruction, the court corrected the instruction to his satisfaction. Brown did not object to the application paragraph, and wisely so, because it arguably saddled the government with a more difficult (if not unattainable) burden of proof—proving that Brown himself used and exhibited the weapon, which he plainly did not.

**3.** *See infra* note 12.

argued that the evidence independent of the accomplice-witness testimony was insufficient—that the State failed to carry its burden of proof because it "proved only that [he] was near the scene of the robbery." *See* Brown's Petition for Discretionary Review (filed December 5, 1983) at 3. In this proceeding, he is arguing, similarly, that the State did not prove all of the elements of aggravated robbery, specifically, that Brown personally used or exhibited a firearm. In our view, the instant challenge to the sufficiency of the evidence was subsumed within Brown's sufficiency claim on direct appeal. This is not a case like *Clark v. Texas*, 788 F.2d at 310, in which the petitioner failed to raise a sufficiency challenge altogether.

## B

■ Even assuming that the state courts could have invoked a procedural bar to dispose of Brown's state habeas petition, "it fairly appears" that the judgment of the 43rd Judicial District Court of Parker County, Texas (the last state court to issue a written opinion) "rested primarily on federal law or was interwoven with federal law." *See Coleman v. Thompson,* — U.S. —, —, 111 S.Ct. 2546, 2560, 115 L.Ed.2d 640 (1991). Under such circumstances, "a procedural default does not bar consideration of a claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment

rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263, 109 S.Ct. 1038, 1043, 103 L.Ed.2d 308 (1989).[4]

We entertain no doubt that the state habeas court addressed federal constitutional claims. In denying Brown's petition, the state court specifically noted that "the District Attorney of Parker County failed to answer within the time allotted by law," and therefore, the court *"proceeded to consider said petition."* [5] "After having reviewed the pleadings and instruments on file" the state court reasoned that there were "no controverted, previously unresolved issues of fact material to the legality of the Petitioner's conviction" and recommended that the petition be denied. It is quite plain that the state court's denial of Brown's petition was an adjudication on the merits of his state habeas petition raising the same constitutional challenge to the sufficiency of the evidence which he presents to this court; the state court did not rest its judgment on an independent and adequate state ground. *Cf. Coleman,* — U.S. at — - —, 111 S.Ct. at 2559–60 ("court's explicit grant of a dismissal motion based solely on procedural grounds" demonstrated that the court's judgment rested "primarily on state law").[6] Accordingly, Brown's federal claims are not procedurally barred, and we therefore turn our attention to the merits of his petition.

## III

In *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560

---

**4.** We have held that the *Harris* rule applies retroactively. *Young v. Herring,* 917 F.2d 858, 862 (5th Cir.1990).

**5.** The state court's judgment appears to be a standard form judgment which the court routinely uses to deny petitions on the merits. The State does not suggest that there is any basis for deducing from that judgment that the state court applied a procedural bar to Brown's claims.

**6.** In *Coleman,* the petitioner untimely filed his notice of appeal from the final judgment of the state trial court denying his petition for state habeas relief. In the Virginia Supreme Court, the State filed a motion to dismiss the appeal for the sole purpose of challenging the timeliness of the appeal under a state procedural rule. The Virginia Supreme Court did not act immediately on the motion, and the parties filed

briefs on the merits. Ultimately, in a perfunctory order, the court granted the State's *motion. Coleman,* — U.S. at —, 111 S.Ct. at 2552–53. The court did not specifically state, however, the basis for its decision; thus, the last state court rendering judgment did not "clearly and expressly state[ ] that its judgment rest[ed] on a state procedural bar." *Harris,* 109 S.Ct. at 1043. Nevertheless, the Supreme Court held that Coleman's federal habeas claims were procedurally barred. The Court reasoned that the Virginia Supreme Court's "explicit grant of a dismissal motion based solely on procedural grounds" made clear that the decision was "independent of federal law." *Coleman,* — U.S. at —, 111 S.Ct. at 2562. The Court concluded that the judgment " 'fairly appears' to rest primarily on state law." *Id.* at —, 111 S.Ct. at 2561.

(1979), the Supreme Court held that in a federal habeas corpus proceeding challenging the sufficiency of the evidence supporting a state conviction, a petitioner is entitled to relief where "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." In a footnote, the Court observed that this "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." *Id.* at 324 n. 16, 99 S.Ct. at 2792 n. 16. Seizing on that footnote, Brown asserts his entitlement to habeas corpus relief on the grounds that the evidence presented at his trial was insufficient as a matter of Texas law to convict him of the crime of aggravated robbery as charged in the indictment and court's instructions to the jury.

As an initial matter, Brown readily concedes that under Texas law, the evidence of his participation in the robbery as the getaway car driver was sufficient to sustain a conviction for aggravated robbery under the law of parties as defined in Tex.Penal Code Ann. §§ 7.01, 7.02. *See Thompson v. State,* 697 S.W.2d 413, 417 (Tex.Crim.App. 1985). He takes the position, however, that the State could not rely on a party theory of culpability to convict him because the jury charge instructed the jury that it had to find that Brown acted as a principal, not merely as a party-accomplice, with respect to the use and exhibition of the firearm. He finds support for his argument in a line of Texas cases which hold that the evidence presented at trial must conform to the theory of responsibility in the jury charge given, failing which, the court must enter a judgment of acquittal. *See Nickerson v. State,* 782 S.W.2d 887, 891–92 (Tex.Crim. App.1990); *Stephens v. State,* 717 S.W.2d 338, 340–41 (Tex.Crim.App.1986); *Benson v. State,* 661 S.W.2d 708, 716 (Tex.Crim. App.1982), *cert. denied,* 467 U.S. 1219, 104 S.Ct. 2667, 81 L.Ed.2d 372 (1984).

## A

We have no quarrel with Brown's interpretation and application of Texas law.

Brown correctly characterizes *Nickerson* as a case strikingly similar to the case at bar. There, the defendant was convicted of the offense of attempting to obtain drugs by forgery. One of the application paragraphs of the jury charge instructed the jury to find the defendant guilty if the defendant "did intentionally or knowingly attempt to obtain possession of a controlled substance ... from Linda Libby *by presenting to her a forged writing....*" *Nickerson,* 782 S.W.2d at 889 (emphasis added).[7] This paragraph was followed by a "party" instruction, similar to the one given in Brown's trial, explaining that the defendant could be convicted based on his own conduct or on the conduct of one for whom the defendant was criminally responsible. *See* Tex.Penal Code Ann. §§ 7.01(a), 7.02(a)(2). Nevertheless, the court "required that the State prove the essential elements that the [defendant] presented the forged prescription to Linda Libby. By not objecting to a charge which unnecessarily increased the State's burden of proof, the State deemed the charge correct and accepted that burden." *Id.* at 891. The evidence viewed in the light most favorable to the State did not establish that the defendant himself ever possessed or presented the forged document—it merely established that the defendant was a party-accomplice to the transaction. Even though the defendant was guilty under a party theory of culpability, the court ordered entry of a judgment of acquittal. *Id.* at 892. Significantly, the court rejected the State's contention that the inclusion of "an abstract definitional paragraph on the law of parties ... put that theory of culpability before the jury." *Id.* at 891.

The thrust of *Nickerson* is that the evidence must conform to the theory of criminal responsibility submitted to the jury in the court's instructions. Where the theory of culpability in the application paragraphs of the jury charge is that the defendant acted as a principal, the evidence must support *that* theory, not a theory of party-ac-

---

**7.** The court's instructions contained a second alternative application paragraph with which we need not concern ourselves for purposes of this discussion. *See Nickerson,* 782 S.W.2d at 890.

complice liability. In the absence of evidence to satisfy that heightened burden, the state appellate court reverses the conviction with instructions to enter a judgment of acquittal.[8] *See also Stephens,* 717 S.W.2d at 341–42 (evidence insufficient to convict the defendant of aggravated rape); *Benson,* 661 S.W.2d at 713–16 (evidence insufficient to convict defendant of burglary of a habitation with intent to commit the offense of retaliation).

We agree with Brown that under *Nickerson* (and *Stephens* and *Benson* ) his conviction would not withstand a sufficiency challenge in the Texas courts.[9] The undisputed facts demonstrate that at no time did Brown personally "use or exhibit" a firearm in the course of the robbery; his accomplices did. The evidence plainly did not conform to theory of criminal responsibility presented in the indictment and the application paragraphs of the jury charge.

But that does not end our inquiry. This case is not before us on direct appeal, and we do not sit as a transcendental state appellate court. We do not police every minutiae in state criminal procedural activity. We are called upon to issue the writ of habeas corpus when the Constitution is in issue, not every time a state court holds contrary to our opinion of what its law prescribes. *Smith v. Phillips,* 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982). We are ever alert to the constitutional error in criminal procedures, but will not ferret out every detail that violates some procedural directive of a state.

Brown's contention that *Nickerson, Stephens,* and *Benson* expose the insufficiency of the evidence presented against him overlooks the core issue in this habeas appeal: whether the evidence was constitutionally sufficient to convict him of the crime charged, not whether a state appellate court would have reversed his conviction on the basis of a state procedural nuance foreign to federal constitutional norms.

■■■ To determine sufficiency of a state conviction as a matter of *constitutional* law, we look merely to the *"substantive elements* of the criminal offense as defined by state law," *Jackson,* 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16 (emphasis added), not, as Brown suggests, to a State's procedural requirements. Under Texas law, there are essentially two substantive elements which the state must prove to convict a defendant of aggravated robbery: (1) that the defendant committed robbery;[10] and (2) that the defendant used or exhibited a deadly weapon. *See* Tex.Penal Code Ann. § 29.03(a)(2) (Vernon 1989).[11] Read in conjunction with the law of parties (set forth in the court's instructions), the substantive elements of aggravated robbery demand proof, beyond a reasonable doubt, that the defendant or someone for whom the defendant is criminally responsible committed robbery and used or exhibited a deadly weapon. The State proved precisely that: the evidence unequivocally established that Brown planned the rob-

**8.** If the State objects to the erroneous instruction and the court nevertheless charges the jury on the higher burden, then the defendant is not entitled to a judgment of acquittal; instead, the appellate court finds "trial error," reverses the conviction, and remands the case for a new trial. *Stephens,* 717 S.W.2d at 341; *see also Stephens v. State,* 806 S.W.2d 812 (Tex.Crim. App.1990) (McCormick, P.J., dissenting) ("[r]emarkably, the Court majority in *Benson* and its progeny attach great legal significance to the fact that the State acquiesced in or did not object to the instructions given to the jury or did not request additional instructions").

**9.** As we indicated in Part I of this opinion, Brown did not vigorously press this insufficiency argument on direct appeal, and the state courts did not discuss the issue in disposing

Brown's state habeas petition. *See also infra* note 12.

**10.** One commits robbery "if, in the course of committing theft as defined in Chapter 31 of this code, and with intent to obtain or maintain control of the property, he ... intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." Tex.Penal Code Ann. § 29.02(a)(2). One commits theft "if he unlawfully appropriates property with intent to deprive the owner of property." *Id.* at § 31.03(a).

**11.** Under Texas law, a person commits aggravated robbery "if he commits robbery as defined in Section 29.02 of [the Penal] code, and he ... uses or exhibits a deadly weapon." Tex.Penal Code Ann. § 29.03(a)(2) (Vernon 1989).

bery with his two compadres, drove them to the scene of the crime, and waited outside in the get-away car while they robbed the victims at gun point.

In our view, the technical violation of the state-law rule of *Nickerson, Stephens,* and *Benson* does not rise to constitutional heights. There is no parallel rule of constitutional law which demands exactitude with respect to the conformance of the evidence to the indictment and jury charge. To be sure, we consistently have held in the context of federal trials that "one who has been indicted as a principal may, on proper instructions, be convicted on evidence showing only that he aided and abetted the commission of the offense." *United States v. Robles–Pantoja*, 887 F.2d 1250, 1255 (5th Cir.1989); *United States v. Gordon*, 812 F.2d 965, 969 (5th Cir.) *cert. denied*, 483 U.S. 1009, 107 S.Ct. 3238, 97 L.Ed.2d 743 (1987); *United States v. Oquendo*, 505 F.2d 1307, 1310 n. 1 (5th Cir.1975). In this case, the court instructed the jury on the law of parties thereby placing that theory of culpability before the jury. *But see Nickerson*, 782 S.W.2d at 891 ("[s]imple inclusion in the charge of an abstract definitional paragraph on the law of parties does not guarantee correct application of those definitions to the facts of the case in the application portion of the charge"). Although the evidence did not conform *strictly* to the theory of culpability as alleged in the indictment and charged

in the *application paragraphs* of the court's instructions, we hold that the evidence sufficed to prove the substantive elements of aggravated robbery under the law of parties as charged generally in the court's instructions. *See Thompson*, 697 S.W.2d at 417 (evidence sufficient to sustain conviction for aggravated robbery where defendant drove get-away car). *Jackson* demands no more.[12]

### B

■ Even if the rule of *Nickerson, Stephens,* and *Benson* embodied a constitutional complexion, we would still not afford Brown the relief he seeks. "[W]e do not grant a writ of habeas corpus in every instance in which the state has failed to conform to constitutional requirements." *Clark v. Maggio*, 737 F.2d 471, 475–76 (5th Cir.1984), *cert. denied*, 470 U.S. 1055, 105 S.Ct. 1761, 84 L.Ed.2d 823 (1985). Before we will issue the Great Writ, the petitioner must demonstrate that he has suffered some prejudice as a result of the alleged constitutional violation—in this case, the perceived variance between the evidence and the jury charge. On that score, Judge Rubin's opinion for the court in *Clark* is dispositive.

In *Clark*, the defendant was convicted of first degree murder following a trial by jury, and ultimately received a sentence of life imprisonment without possibility of pa-

---

**12.** In his direct appeal from conviction, Brown challenged the sufficiency of the evidence on the ground that under Texas law, "[a] conviction cannot be had upon the testimony of an accomplice witness unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." *Brown*, 672 S.W.2d at 488. Texas law provides that where there is no independent evidence to corroborate the testimony of an accomplice-witness, the evidence is insufficient as a matter of law, and the defendant is entitled to a judgment of acquittal. *See Reed v. State*, 744 S.W.2d 112, 125–28 (Tex.Crim.App. 1988) (citing Tex.Code of Crim.Proc. Article 38.-14) (evidence independent of the accomplice-witness testimony must tend to connect defendant with offense committed). Under Brown's thesis, therefore, he could (but did not) raise in

this habeas proceeding a challenge to the sufficiency of the evidence based on the absence of evidence corroborating an accomplice-witness' testimony.

Of course, the Constitution imposes no requirement that the testimony of an accomplice-witness be corroborated by independent evidence. Accordingly, the prosecution's failure to satisfy the requirements of the accomplice-witness sufficiency rule, and a state court's failure to enforce that purely state rule, simply would not warrant constitutional attention. *See Smith v. Phillips*, 455 U.S. 209, 221, 102 S.Ct. 940, 948, 71 L.Ed.2d 78 (1982) (only federal constitutional claims are cognizable in a federal habeas proceeding). *Jackson*, which instructs us to look to the "*substantive elements* of the criminal offense as defined by state law," *Jackson*, 443 U.S. at 324 n. 16, 99 S.Ct. at 2792 n. 16 (emphasis added), does not counsel to the contrary.

role for a minimum of twenty years.[13] The record in *Clark* was devoid of any evidence that the defendant had the "specific intent to kill or inflict great bodily harm" upon the victim, an essential element of first degree murder.[14] Guided by the teachings of *Jackson* and this court's earlier decision in *Colin Clark v. Louisiana State Penitentiary,* 694 F.2d 75, 78 (5th Cir.1982), we held that the evidence was constitutionally insufficient to convict the defendant of first degree murder. Yet, this court did not grant the writ. Observing both that the evidence in the record was sufficient to convict the defendant of second degree murder and that the sentence for that lesser included offense would have been the same as the one actually imposed on him for first degree murder, we found "no basis for granting a writ on the basis of insufficiency of the evidence." *Clark,* 737 F.2d at 476.[15]

Under the sound reasoning of *Clark,* Brown's application for collateral relief cannot succeed. As we noted at the outset, Brown concedes, and we agree, that the evidence at trial sufficed to convict him of aggravated robbery under a party theory of culpability. The trial court instructed the jury on that theory, and the jury's guilty verdict, although arguably inconsistent with the application paragraphs of the jury charge, is supported by ample evidence of Brown's participation as a party-accomplice in the aggravated robbery. Moreover, Texas law draws no distinction between principals and accomplices for purposes of assessing criminal responsibility and punishment; they are all equally culpable. *See* Tex.Penal Code Ann. §§ 7.01, 7.02

and Practice Commentary (Vernon 1989). Thus, Brown's sentence for his conviction of aggravated battery, whether as a principal or as a party-accomplice, would have been the same, and therefore, he cannot demonstrate any constitutional prejudice from the technical variance.

## IV

We unsheath the Great Writ to uphold a constitutional right or negate a constitutional deprivation, not merely to correct or enforce every state procedural or even substantive miscue. We are neither penurious nor extravagant in its dispensation. We cannot mathematize the starting point of its invocation; rather, ours must be an exploratory experience.

Our exploration today leaves us firmly convinced that a rational trier of fact would have found proof of Brown's guilt of aggravated robbery beyond a reasonable doubt in light of the evidence and the court's instructions. Moreover, the punishment dealt Brown would have been the same whether convicted as a principal or merely as a party-accomplice. Under these circumstances, we decline to unsheath the Great Writ from its scabbard.

The judgment of the district court is

AFFIRMED.

---

**13.** Clark was originally sentenced to death by electrocution, but because the Supreme Court had declared as unconstitutional Louisiana's mandatory death penalty scheme, he was resentenced to life imprisonment.

**14.** Louisiana law defined first degree murder "as the killing of a human being 'when the offender has a specific intent to kill or to inflict great bodily harm *and* is engaged in the perpetration or attempted perpetration of ... armed robbery.'" *Id.* at 474–75 & n. 13 (emphasis in original) (quoting La.Rev.Stat.Ann. § 14:30(1) (West 1974)).

**15.** In *Colin Clark,* we found a constitutional violation because the defendant was convicted

of first degree murder and sentenced to death notwithstanding an ambiguity in the court's instruction on the intent element of the crime. Acknowledging that the evidence was sufficient to convict the petitioner of a lesser offense for which the punishment could not be death, we remanded the case to the district court "with directions to grant the writ *subject to* further proceedings in the state court to retry *or resentence* the petitioner." *Colin Clark,* 694 F.2d at 78 (emphasis added). Thus, the State could obviate the issuance of the writ by resentencing the petitioner pursuant to the lesser offense for which the evidence was sufficient.