956 So.2d 358 (2007)
James JOHNSON, Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-01913-COA.
Court of Appeals of Mississippi.
May 15, 2007.
*360 Walter E. Wood, Ridgeland, attorney for appellant.
Office of the Attorney General by Billy L. Gore, attorney for appellee.
Before MYERS, P.J., IRVING and BARNES, JJ.
BARNES, J., for the Court.
¶ 1. James Johnson was convicted of capital murder following a trial conducted in the Circuit Court of Madison County. Johnson was subsequently sentenced to a term of life in the custody of the Mississippi Department of Corrections. Aggrieved, Johnson perfected this appeal, asserting that the trial court erred by issuing a jury instruction which was inconsistent with the State's theory of guilt at trial, and by denying Johnson's motion in limine to prohibit the introduction of testimony which he contends contained hearsay statements. We find Johnson's assignments of error to be without merit and affirm his conviction by the circuit court.

SUMMARY OF FACTS AND PROCEDURAL HISTORY
¶ 2. Manav Virmani was working as a cashier at Mac's Convenience Store in Canton, Mississippi on the evening of July 2, 2001.[1] According to Mac's manager, Amarjeet Singh, Virmani was to meet Singh for dinner at a nearby restaurant after Virmani closed the convenience store at 9:00 p.m. When Virmani failed to answer Singh's phone calls placed to both Virmani's cell phone and to the store sometime between 8:00 and 8:30 p.m., Singh went by the house where Virmani was residing to see if Virmani had perhaps closed Mac's early and gone home. Following a futile search of Virmani's residence, Singh went to the convenience store where he discovered Virmani's lifeless body. An autopsy performed on July 3, 2001, revealed that Virmani was shot three times, the fatal shot entering the left side of his head and lodging inside his skull.
¶ 3. Singh testified that after contacting the police, he discovered that there were *361 three drawers missing from the store's cash registers. During his search of the area the following morning, Canton Police Investigator Johnny Burse noticed scuff marks leading away from the rear of the convenience store. Burse followed the scuff marks to a ditch where he discovered a trash can containing three cash drawers similar to those missing from Mac's. The Mississippi State Crime Lab found a latent fingerprint on the underside of one of the cash drawers. A comparison of the latent fingerprint with a sample taken from Johnson revealed that the fingerprint on the cash drawer had been left by Johnson.
¶ 4. James Johnson was subsequently arrested, and a grand jury indicted him for capital murder on October 17, 2001. In pertinent part, the indictment returned by the Madison County Grand Jury provided as follows:
JAMES JOHNSON, late of the county aforesaid, on or about the 2nd day of July, 2001, in the county aforesaid and within the jurisdiction of this court, did willfully, unlawfully, and feloniously shoot and kill Manva [sic] Virmani, a human being, while he, the said JAMES JOHNSON, was then and there engaged in the felony crime of robbery, in violation of Miss.Code Ann. § 97-3-19(2)(e) [1972, as amended] and against the peace and dignity of the State of Mississippi.
After several continuances, Johnson's trial in the Madison County Circuit Court began on August 2, 2005.
¶ 5. At trial, the State introduced into evidence the abandoned cash register drawers found behind Mac's Convenience Store and elicited expert testimony identifying the fingerprint found on one of the cash drawers as having been left by Johnson. This was the only physical evidence introduced at trial linking Johnson to the robbery and murder of Virmani. Testimony elicited during cross-examination of the fingerprint expert revealed that the latent print found on the cash drawer could have been left as long as one year prior to discovery of the drawer behind Mac's. Further cross-examination testimony from various State witnesses established that the cash drawers could not be positively identified as the drawers taken from Mac's Convenience Store on the night of the robbery/homicide, nor could any of the witnesses testify affirmatively that no one except employees had handled the cash drawers. Although the fingerprint on the cash drawer was the only physical evidence produced at trial linking Johnson to the robbery and murder of Virmani, several witnesses for the State testified regarding the involvement of Johnson and his brother (and alleged accomplice), James Howard, in the crime. According to these witnesses, not only did Johnson and Howard talk about committing the crime prior to its commission, one of the State's witnesses testified that Johnson also confessed to killing Virmani subsequent to the robbery and murder.[2]
¶ 6. At the conclusion of the two-day trial, a unanimous jury found Johnson guilty of capital murder, and the trial judge sentenced Johnson to a term of life in prison. Final judgment was entered to this effect on August 3, 2005. Johnson promptly filed a "Motion for Judgment Notwithstanding the Jury Verdict or for New Trial" on August 12, 2005, which was denied by order entered on September 12, 2005. Johnson timely filed his notice of appeal on September 26, 2005, asserting error by the trial court in two respects. First, Johnson contends that the trial *362 court erred by allowing a jury instruction based on accomplice liability when the State's theory of guilt at trial was that Johnson was the principal in the robbery and murder of Virmani. Johnson argues not only that he had inadequate notice that he would be subjected to an accomplice theory of guilt, in violation of his due process rights, but also that there was insufficient evidence to allow an accomplice liability instruction to be submitted to the jury. Second, Johnson argues that the trial court erred by allowing certain testimony that he claims contained hearsay statements. Finding no reversible error by the trial court, we affirm.

DISCUSSION
I. WHETHER THE TRIAL COURT ERRED IN SUBMITTING A JURY INSTRUCTION BASED ON ACCOMPLICE LIABILITY
¶ 7. The standard of our review for the grant or denial of jury instructions is well established. According to the Mississippi Supreme Court, in reviewing challenges to jury instructions, "[t]he instructions actually given must be read as a whole." Williams v. State, 803 So.2d 1159, 1161 (¶ 7) (Miss.2001) (quoting Hickombottom v. State, 409 So.2d 1337, 1339 (Miss. 1982)). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id. (quoting Hickombottom, 409 So.2d at 1339). A trial court "may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence." Ladnier v. State, 878 So.2d 926, 931 (¶ 20) (Miss.2004) (quoting Heidel v. State, 587 So.2d 835, 842 (Miss. 1991)). In the instant case, Johnson takes issue with jury instruction number five, which we recite in its entirety:
The Court instructs the jury that if you find from the evidence that the crime of Capital Murder was committed in this case; each person who was present, consenting to the commission of the crime and doing any act which aided, assisted or encouraged the crime, is guilty to the same extent as if he committed the whole crime.
¶ 8. Johnson does not contend that this jury instruction contains an incorrect statement of the law; rather, he argues that, because the indictment charged Johnson as a principal, and since the State's theory of guilt at trial was that "Johnson was a principal perpetrator in the felony murder on July 2, 2001," it was error to allow an instruction based on a theory of accomplice liability to be submitted to the jury. Alternatively, Johnson asserts that there was insufficient evidence produced at trial to allow submission of a jury instruction based on accomplice liability. For reasons that we will now discuss, we find both of Johnson's arguments with respect to jury instruction number five to be without merit.
A. WHETHER THE INDICTMENT CHARGING JOHNSON AS A PRINCIPAL PRECLUDED SUBMISSION OF A JURY INSTRUCTION BASED ON ACCOMPLICE LIABILITY
¶ 9. Johnson argues on appeal that the trial judge erred by granting a jury instruction which, according to Johnson, enlarged his liability by allowing the jury to convict him of capital murder even if the jury did not believe that Johnson was the actual triggerman. Johnson asserts that neither the indictment, which charged Johnson as a principal, nor the State's theory of liability during its case-in-chief gave him notice that he may be found guilty based on an accomplice theory of guilt. We do not find Johnson's argument to be persuasive.
*363 ¶ 10. In Pratt v. State, 870 So.2d 1241 (Miss.Ct.App.2004), this Court was presented with an identical argument to the one which Johnson asserts in the instant case. There, the defendant argued that "because he was indicted for the sale of a controlled substance and not as an accessory," the trial court was in error for allowing a jury instruction based on accomplice liability. Id. at 1249 (¶ 26). During objections to jury instructions, counsel for defendant argued that "[the defendant] was not charged with aiding and abetting, accessory, conspiracy, encouraging, anything like that; and I think it would [be] error to allow the [S]tate to come in now at the end at the close of the case and to change [its] theory of the case." Id. at (¶ 27). In allowing the challenged instruction, the trial judge in Pratt cited the fact that the criminal statute at issue allowed an accessory-before-the-fact to be charged, indicted, and sentenced as a principal. Id. We affirmed the judgment of the trial court in that case, holding that "[e]ven though his indictment charged him as a principal, the evidence presented supports the instruction given." Id. at 1250 (¶ 28) (citing Hollins v. State, 799 So.2d 118, 123 (¶ 14) (Miss.Ct.App.2001)).
¶ 11. Johnson cites Brown v. Collins, 937 F.2d 175 (5th Cir.1991) to support his contention that the trial court erred by allowing a jury instruction based on accomplice liability. In Brown, the federal circuit court, applying Texas substantive law, stated that "[w]here the theory of culpability in the application paragraphs of the jury charge is that the defendant acted as a principal, the evidence must support that theory, not a theory of party-accomplice liability." Id. at 180-81. Even assuming, without deciding, that the holding of Brown is in harmony with the law of Mississippi, we nevertheless find Brown inapplicable to the facts of the instant case. In Brown, an accomplice instruction was not given, whereas in the instant case, jury instruction number five did contain such an instruction. The implication of the Brown court's holding is evident from the following quote: "Where the jury is instructed that the defendant must be found guilty as a principal, but the evidence does not support that theory of culpability, the defendant is entitled to a judgment of acquittal even if the evidence is sufficient to convict the defendant as a party-accomplice." Id. at 176. We find nothing in the holding of Brown to support Johnson's contention that an accomplice instruction should not have been given in the instant case.
¶ 12. We likewise find no support for Johnson's argument in the Mississippi statutory provision which addresses accomplice liability. Mississippi Code Annotated section 97-1-3 (Rev.2006) provides that "[e]very person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such; and this whether the principal have been previously convicted or not." Accordingly, Johnson cannot claim prejudice by a jury instruction that properly instructed the jury in accordance with section 97-1-3 simply because the indictment did not contain any allegations regarding accomplice liability. See Pratt, 870 So.2d at 1250 (¶ 28). The clear language of section 97-1-3, as well as the holdings of both this Court and the Mississippi Supreme Court interpreting and applying that provision, provide sufficient notice to felony defendants that although they may be indicted as a principal, a jury instruction based on accomplice liability is proper, provided that "the evidence presented supports the instruction given." Id. We turn now to the issue of whether the evidence presented in the case sub judice supports the instruction given.
*364 B. WHETHER THE EVIDENCE SUPPORTS JURY INSTRUCTION NUMBER FIVE
¶ 13. Johnson's alternative assignment of error with respect to jury instruction number five is that "the allowance of the jury instruction was not supported by sufficient evidence." However, Johnson's argument on this issue appears to call into question the credibility of witnesses for the State, witnesses whose testimony, if believed by the jury, clearly establishes that Johnson was substantially involved in the robbery and murder of Manav Virmani. Johnson points out in his brief that one of the State's witnesses, Patricia McCoy, pled guilty to accessory-after-the-fact in the capital murder of Virmani for disposing of the bloody clothes worn by Johnson and alleged accomplice James Howard during the robbery and murder. Patricia agreed to testify against Johnson as part of her plea agreement with the State. Two of Patricia's adult children, Shonda and Marcus McCoy, also testified for the State at trial. Johnson argues that, because Patricia agreed to testify as part of a plea agreement, her testimony "should be viewed with great caution," and that the testimony of Shonda and Marcus "should be scrutinized for bias and motive." Johnson further argues that, "[a]bsent the tainted testimony of the McCoy family, all the State offered was evidence of a fingerprint found on one of the cash register drawers." We are not persuaded by this argument. We note that the record reflects that the jury was aware of all of the facts which Johnson contends indicate "bias and motive," and it is the jury's role to determine whether or not the testimony of these witnesses was "tainted."
¶ 14. Our supreme court has acknowledged the well-settled role of the jury in assessing the credibility of witnesses. In Copeland v. Jackson, 548 So.2d 970 (Miss. 1989), the supreme court emphatically reiterated the rule as follows: "This Court has stated too often to need repeating that the jury is the sole judge of a witness' credibility and the weight to be given his testimony, and that the jury may reject any or all parts of a witness' testimony." Id. at 981 (citing Wells Fargo Armored Serv. Corp. v. Turner, 543 So.2d 154, 156 (Miss.1989); BFGoodrich, Inc. v. Taylor, 509 So.2d 895, 903 (Miss.1987); Garcia v. Coast Elec. Power Ass'n, 493 So.2d 380, 382 (Miss. 1986); Travelers Indem. Co. v. Rawson, 222 So.2d 131, 134 (Miss.1969)). Although Johnson's argument essentially concedes that, if credible, the testimony of Patricia and Shonda McCoy would support both the contested jury instruction and the jury's verdict, we will nevertheless analyze that testimony for sufficiency purposes. In so doing, "we must accept as true all the testimony offered on behalf of the State together with all the reasonable inferences drawn therefrom." Boches v. State, 506 So.2d 254, 259 (Miss.1987) (citing Burnham v. State, 467 So.2d 946, 947 (Miss.1985)).
¶ 15. Patricia, who had entered a plea of guilty to the charge of accessory after the fact, testified as follows:
Q. [BY PROSECUTOR:] What were the facts surrounding your guilty plea? How was it that you were even involved as an accessory after the fact?
A. Because I threw the bloody clothes away.
Q. How did the bloody clothes come into your possession?
A. When James Johnson and Wilbert Williams changed clothes in my apartment.
Q. Then what happened?
A. They told me  I don't know which one it was. James Howard and James Johnson, told me to throw the clothes away, but I did.

*365 [BY DEFENSE COUNSEL:] Objection, your Honor.
THE COURT: Overruled, you made your record.
Q. ([Prosecutor], Continuing) Now say that again, please.
A. I can say it again? It was James Johnson or James Howard told me to throw the bag away with the bloody clothes in it.
Q. What [did you] do in response?
A. I threw them away.
Q. How did you know what was in the bag?
A. Because they told me what was in there.
¶ 16. Shonda McCoy, Patricia's daughter, gave the following testimony at trial:
Q. [BY PROSECUTOR:] Had you been around  what if any occasion did you have to be around James Johnson and James Howard before Mac's Superette was robbed and the man was killed? Did you have an occasion to be around him before then?
A. Yeah.
Q. And did you have a conversation or did you hear a conversation about that?
A. Well, just them planning, you know, to rob the place or whatever. But it was like a week before everything happened.
Q. And you say they planned, who are you talking about?
A. Well, who was sitting outside was James Johnson and James Howard, and I can't remember who else. But I happened to be out there just around them.
. . . .
Q. And then I want to go to after the actual robbery and the actual killing. What if any, were you curious as to what happened?
A. Yeah.
Q. Did you have a conversation with James Johnson about that?
A. Well, yeah. I had asked him a question like why, you know, they had killed the man and stuff like that. But he just said he killed him and he'll kill again.
Q. What exactly, if you can remember, did he tell you about that, about killing?
[BY PROSECUTOR:] Your Honor, I'd ask the court to instruct the witness that I'm afraid there's some bad language that she's afraid of using; however, it's acceptable in the court because it's the facts.
THE COURT: Yeah, she can respond to your questions.
A. Okay, well, excuse my language. He told me, "I killed the m____ f____, and I'll kill again."
Q. That was James Johnson that said that?
A. Yeah.
¶ 17. From the preceding testimony, viewed in a light most favorable to the State, we find sufficient evidence produced at trial to support not only jury instruction number five, but also to support the jury's verdict. If the jury believed all of the testimony offered by Shonda, including Johnson's confession to which Shonda testified, then there was sufficient evidence to support a finding that Johnson was the principal in the robbery and murder of Virmani. If the jury chose to disregard the confession and believe only Patricia's testimony regarding the bloody clothes and Shonda's testimony regarding the planning of the crime, then the evidence was sufficient to support an accomplice instruction and Johnson's conviction as a principal. As previously stated, "the jury may reject any or all parts of a witness' testimony." Copeland, 548 So.2d at 981. Viewing the testimony of the McCoys in a light most favorable to the State, with all *366 reasonable inferences drawn accordingly, we find that the evidence contained in the record is sufficient to support an accomplice jury instruction as well as sufficient to support the jury's verdict finding Johnson guilty of capital murder. Moreover, the fact that some of the inculpatory testimony came from Patricia, an accessory after the fact to this crime, does not affect our decision.
¶ 18. As our supreme court has held, where uncorroborated accomplice testimony is "reasonable, not improbable, self-contradictory or substantially impeached, . . . such testimony may be found to adequately support a conviction." Johns v. State, 592 So.2d 86, 88 (Miss.1991) (citations omitted). Not only was Patricia's testimony corroborated by other witnesses, but we also find nothing in the record to indicate that her testimony was unreasonable, improbable, self-contradictory, or substantially impeached. In an exercise of caution, the trial court granted defendant's proposed jury instruction D-10, which instructed the jury to consider and weigh accomplice testimony "with great care and caution," and that the jury "may give it such weight and credit as [the jurors] deem it is entitled."[3] Accordingly, this assignment of error is without merit. We turn now to Johnson's assertion that the trial court improperly allowed hearsay testimony.
II. WHETHER THE TRIAL COURT ERRED BY ALLOWING CERTAIN TESTIMONY GIVEN BY PATRICIA MCCOY AND DETECTIVE WILLIE HARPER WHICH JOHNSON ALLEGES WAS HEARSAY
¶ 19. Johnson argues on appeal that it was error for the trial court in this case to deny his "motion in limine to prohibit the admission of particular hearsay evidence." Specifically, Johnson alleges that Patricia McCoy should not have been allowed to testify as to what Johnson and/or Howard, Johnson's alleged accomplice, told her regarding the disposal of the pair's bloody clothes. Johnson also argues that his motion in limine should have been granted with respect to testimony offered by Detective Willie Harper in which Harper referred to several anonymous phone calls. A party is entitled to a motion in limine "only when the trial court finds two factors are present: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury." Whittley v. Meridian, 530 So.2d 1341, 1344 (Miss. 1988) (quoting State v. Quick, 226 Kan. 308, 597 P.2d 1108, 1112 (1979)). Because we find the first factor lacking, we find that the trial court properly denied Johnson's motion in limine with respect to the challenged testimony.
¶ 20. The State argues that the testimony of Patricia McCoy which Johnson contends was hearsay is actually non-hearsay pursuant to Mississippi Rules of Evidence 801(d)(2)(E), which provides that "[a] statement is not hearsay if: . . . [t]he statement is offered against a party and is . . . (E) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy." The challenged testimony, given by Patricia at trial, is found in the following exchange:[4]

*367 Q. [BY PROSECUTOR:] What were the facts surrounding your guilty plea? How was it that you were even involved as an accessory after the fact?
A. Because I threw the bloody clothes away.
Q. How did the bloody clothes come into your possession?
A. When James Johnson and Wilbert Williams changed clothes in my apartment.
Q. Then what happened?
A. They told me  I don't know which one it was. James Howard and James Johnson, told me to throw the clothes away, but I did.
[BY DEFENSE COUNSEL:] Objection, your Honor.
THE COURT: Overruled, you made your record.
Q. ([Prosecutor], Continuing) Now say that again, please.
A. I can say it again? It was James Johnson or James Howard told me to throw the bag away with the bloody clothes in it.
Q. What [did you] do in response?
A. I threw them away.
Q. How did you know what was in the bag?
A. Because they told me what was in there.
¶ 21. As previously mentioned, Mississippi Rules of Evidence 801(d)(2)(E) exempts from the definition of hearsay any out-of-court statement which is offered against a party only if that statement was made "by a co-conspirator of a party during the course and in furtherance of the conspiracy." M.R.E. 801(d)(2)(E).[5] "[B]efore a co-conspirator's testimony can be admitted under Rule 801(d)(2)(E), the prosecution has the burden of establishing the preliminary fact of a conspiracy." Farris v. State, 764 So.2d 411, 429 (Miss. 2000) (¶ 60) (citing Tavares v. State, 725 So.2d 803, 809 (Miss.1998)). In determining whether the preliminary fact of conspiracy has been established, "the trial court is ordinarily limited to the evidence offered at the Rule 104 hearing. . . ." Id. (citing Ponthieux v. State, 532 So.2d 1239, 1244 (Miss.1988)). However, "on appeal we will search the entire record in determining whether the preliminary fact of conspiracy has been established[, and] `[i]t is to the entire record that we employ a clearly erroneous standard of review.'" Id. (quoting Ponthieux, 532 So.2d at 1244). "A finding of fact is `clearly erroneous' when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." Ponthieux, 532 So.2d at 1244. However, "where we are left with no such conviction, the finding is beyond our authority to disturb." Id.
¶ 22. In the instant case, we find substantial evidence that Johnson and James Howard were involved in a conspiracy. As defined by the Mississippi Supreme Court, "[c]onspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose unlawfully, the persons agreeing in order to form the conspiracy. *368 The offense is complete without showing an overt act in the furtherance of the conspiracy." Farris, 764 So.2d at 428-29 (citing Griffin v. State, 480 So.2d 1124, 1126 (Miss.1985)). Shonda McCoy testified that, approximately one week prior to the robbery and murder of Virmani at Mac's Convenience Store, she overheard Johnson, Howard, and an unidentified individual planning the robbery of Mac's. Accordingly, the preliminary fact of conspiracy was established, and any statements made by Howard in furtherance of the conspiracy could be offered against Johnson as non-hearsay pursuant to Rule 801(d)(2)(E). A statement made in an attempt to conceal evidence of the consummated crime is undoubtedly a statement made "in furtherance of the conspiracy." See Osborne v. State, 99 Miss. 410, 423, 55 So. 52, 54 (1911).[6] From the facts contained in the record, we cannot find that the trial court committed clear error by allowing Patricia's testimony which recounted statements made to her by either Johnson or Howard.
¶ 23. Johnson argues that "the record fails to reflect an established conspiracy between Mr. Johnson and Patricia McCoy to commit any offense." Johnson asserts further that since the State failed to establish a conspiracy between Patricia and Johnson, any statements that Johnson made to her "should be excluded as hearsay, as they were not in support of or in furtherance of a conspiracy." Johnson apparently reads an additional requirement into Rule 801(d)(2)(E) for which he cites no authority. To be considered non-hearsay, subsection (E) merely requires, inter alia, the statement to be made by a co-conspirator, not to a co-conspirator. Nowhere does the rule state that the person giving testimony must have been part of the conspiracy. Nor is the person to whom the statement is made required to be a co-conspirator in order for the statement to be non-hearsay. Accordingly, Johnson's argument to the contrary is without merit.
¶ 24. Johnson next contends that certain testimony given by Detective Willie Harper of the Canton Police Department was hearsay, and thus, the trial court erred by not excluding the challenged testimony pursuant to either Johnson's motion in limine or on objection at trial. The questioned testimony was given in response to the following question posed to Detective Harper by the prosecutor: "How was James Johnson developed as a suspect in this case?" Detective Harper responded: "By anonymous tips at the police department and through witnesses." The State argues that the mere mention of "anonymous tips" does not constitute hearsay. We agree.
¶ 25. Detective Harper's reference to "anonymous tips" did not divulge the substance of what was said in those conversations, did not divulge the identity of any of the callers, and was offered only to give information as to how and why Johnson was developed as a suspect. In a case with analogous facts and issues, the United States Court of Appeals for the Seventh Circuit clearly articulated the rationale for holding as non-hearsay testimony such as that given by Detective Harper:
The record reveals . . . that [Detective] Levy neither revealed the name of the informant nor the contents of the telephone conversation; consequently, the *369 fact tha[t] an anonymous tip occurred was not hearsay. Defendant's objection would have been appropriate had the contents of the telephone conversation been admitted for the truth of the matters asserted therein. Roberts v. State, (1978) 268 Ind. 348, 375 N.E.2d 215. As it was, however, the fact that the tip had occurred was offered for the purpose of establishing the manner in which the police conducted their investigation. The trial court did not err in permitting Levi to testify.
Mason v. Hanks, 97 F.3d 887, 896 (7th Cir.1996) (quoting Head v. State, 443 N.E.2d 44, 59 (Ind.1982)). Therefore, Detective Harper's testimony which divulged that he relied, in part, on anonymous tips was merely a statement of fact regarding his investigative process. Accordingly, Harper's testimony was not hearsay, and the trial court did not err by allowing its admission. We find Johnson's assignment of error to be without merit.

CONCLUSION
¶ 26. For the foregoing reasons, we find no error by the Madison County Circuit Court in allowing jury instruction number five, which instructed the jury on accomplice liability. Furthermore, we find that the trial court did not err by allowing the testimony of Patricia McCoy and Detective Willie Harper. The judgment of the trial court is, therefore, affirmed in all respects.
¶ 27. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF CAPITAL MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR.
NOTES
[1] Mac's Convenience Store is also referred to as "Mac's Superette" throughout the record.
[2] Johnson objected to certain of the testimony offered by the State's witnesses as inadmissible hearsay. We will address this issue below.
[3] According to the Johns court, a trial court in its discretion may give a cautionary instruction regarding accomplice testimony, but is not required to grant such an instruction unless "(1) the witness was, in fact, an accomplice, and, (2) the testimony was not corroborated." Johns, 592 So.2d at 88-89 (citing Derden v. State, 522 So.2d 752, 754 (Miss. 1988)).
[4] We previously set out Patricia's testimony in paragraph fifteen, above, but because of its particular relevance to this issue, we reproduce that testimony again in this section.
[5] Although Patricia could not be certain whether it was Johnson or Howard who told her to dispose of the bloody clothes, we note that the testimony would be admissible either way. As will be shown, if the statement was made by Howard, it would be admissible as a statement made by a co-conspirator in furtherance of the conspiracy pursuant to Rule 801(d)(2)(E). If made by Johnson, the testimony would be admissible "as his own statement" pursuant to Rule 801(d)(2)(A).
[6] In Osborne, the Mississippi Supreme Court, quoting from 12 Cyc. 438 i, stated the following: "Acts or declarations of conspirators are not always excluded because they were done or made after the commission of the crime. If for any reason, as for escape or concealment, the common purpose continues, declarations in furtherance thereof are admissible, although the crime which was the object of the conspiracy has been consummated." Id.