# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

m 97-11195

———————————


LARRY LEE BLEDSUE,

Petitioner-Appellee,

VERSUS

GARY L. JOHNSON,
Director, Texas Department of Criminal Justice,
Institutional Division,

Respondent-Appellant.

———————————————

Appeal from the United States District Court
for the Northern District of Texas

———————————————

August 31, 1999


Before SMITH, DUHÉ, and WIENER,
    Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The state appeals the grant of habeas corpus relief to Larry Bledsue, who had been convicted in state court of intentionally and knowingly possessing 28 or more but less than 400 grams of amphetamine. Concluding that the district court properly entertained the claim, we nevertheless disagree with its conclusion that the evidence adduced at trial was constitutionally insufficient to convict. Thus, we reverse the grant of habeas corpus relief and deny Bledsue's petition.

## I.

In July 1989, Bledsue was indicted for intentionally and knowingly possessing am-phetamine in a quantity less than 400 grams, but of at least 28 grams. The indictment described the offense as "aggravated" but did not state that the weight of the amphetamine necessary to convict could include adulterants or dilutants; neither did it reference TEX. HEALTH & SAFETY CODE § 481.116, the statute defining the offense.

The undisputed evidence indicated that, counting adulterants and dilutants, Bledsue possessed more than 28 grams of amphet-amine, but that absent such additives he possessed only 10 to 17 grams. On an instruction that it could consider the weight of the adulterants and dilutants when determining the total weight of amphetamin, the jury found Bledsue guilty on the "28 grams or more"

count,[1] then sentenced him to life imprisonment under the Texas habitual offender statute after finding his two prior convictions to be "true" for purposes of sentencing.[2]

Bledsue's appeal to an intermediate Texas court was dismissed as untimely. In response, he filed his first petition for habeas corpus relief with the Texas Court of Criminal Appeals, which granted it, allowing him to proceed on direct appeal. Ultimately, his conviction was affirmed by the intermediate court in an unpublished opinion. He did not petition the Court of Criminal Appeals for discretionary review.

Bledsue did, however, file two additional petitions for habeas relief in Texas courts. In his second petition, his principal argument was that the state had failed to prove his possession of at least 28 grams of amphetamine, including adulterants and dilutants, with the intent to increase the amount of amphetamine. The trial court, in a memorandum opinion, found ample evidence to justify the conviction, and the Court of Criminal Appeals denied the petition without written order.

Bledsue then filed a third state habeas petition, in which he specifically argued that (1) the trial court had improperly allowed the jury to include adulterants and dilutants in determining the amount of total amphetamine when the indictment charged only the possession of pure[3] amphetamine, and (2) (reiterating the argument from his second petition) the state had failed to prove his possession of at least twenty-eight grams of amphetamine, including adulterants and dilutants, with the intent to increase the amount of amphetamine. The trial court again found ample evidence to support the conviction, but instead of considering the merits on appeal, the Court of Criminal Appeals denied the petition as successive under TEX. CRIM. P. CODE ANN. ART. 11.07 § 4 (West Supp. 1998).[4]

Bledsue then sought habeas relief in federal court under 28 U.S.C. § 2254, advancing the same two points he had raised in his third state habeas petition. The magistrate judge found that Bledsue's first assignment of error was procedurally barred in federal court because it was not raised until his third state habeas petition, which was dismissed by the Court of Criminal Appeals as successive.[5] But finding Bledsue's second assignment of error procedurally proper——as it had also been raised in his second state habeas petition, which was denied on the merits——the magistrate judge

---

[1] The jury was instructed on the lesser included offense of possession of amphetamine in a quantity less than 28 grams. Although it is inconsequential to the outcome, we find it perplexing that the jury instruction on the "28 grams or more" count allowed the jury to include adulterants and dilutants, but the instruction on the "less than 28 grams" count did not.

[2] TEX. PENAL CODE § 12.42 (West 1994). Bledsue's sentence was assessed under subsection (d), which states,

If it be shown on the trial of a felony offense that the defendant has previously been finally convicted of two felony offenses, and the second previous felony conviction is for an offense that occurred subsequent to the first previous conviction having become final, on conviction he shall be punished by imprisonment for life, or for any term of not more than 99 years or less than 25 years.

TEX. PENAL CODE § 12.42(d).

[3] The indictment referred to "amphetamine" without the adjective "pure," but also without reference to "adulterants and dilutants."

[4] Section 4 of Article 11.04 provides that a court may not consider the merits of a subsequent application for habeas relief after final disposition of an initial application challenging the same conviction.

[5] A federal court is barred from reviewing a habeas application that a state court has expressly dismissed on an independent and adequate state law ground. See Nobles v. Johnson, 127 F.3d 409, 420 (5th Cir. 1997), cert. denied, 118 S. Ct. 1845 (1998).

treated the second claim as an overall challenge to the sufficiency of the evidence.

Ultimately, the magistrate judge recommended granting the writ, finding the evidence constitutionally insufficient in that the state was bound by its indictment, which charged the possession of at least 28 grams of amphetamine but made no mention of adulterants or dilutants. Because the undisputed evidence indicated that Bledsue possessed, at most, 17 grams of pure amphetamine, the magistrate judge recommended a judgment of acquittal, but allowing the state 120 days to retry on the lesser charge of possessing less than 28 grams. The state objected on only the sufficiency claim, but the district court denied the objection and adopted the recommendation.

The state challenges on three fronts. First, it argues that the court improperly granted relief based on insufficient *weight* of drugs to convict, given that Bledsue had argued, to the state courts, only insufficient evidence of *intent*. If, however, the weight claim was contained in his second state habeas petition, the state contends, then Bledsue's state petition was dismissed on a procedural rule rather than on the merits, resulting in a bar to consideration in federal court.

Second and alternatively, the state argues that if the weight claim is in a proper procedural posture for federal consideration, then under a constitutional sufficiency of the evidence test, the evidence adduced at trial was sufficient to prove possession of at least 28 grams. Third, the state urges that even if the evidence was constitutionally deficient, any error is harmless, because Bledsue was undeniably guilty of the lesser included offense of possessing "less than 28 grams," and the punishment range for both crimes is the same.

## II.

In reviewing a grant of habeas relief, we examine factual findings for clear error and issues of law *de novo*. *Lauti v. Johnson*, 102 F.3d 166, 168 (5th Cir. 1996). Mixed questions of law and fact are also reviewed *de novo* by "independently applying the law to the facts found by the district court, unless those factual determinations are clearly erroneous." *Id.* at 169. Additionally, Bledsue's federal habeas claim is governed by the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), under which federal courts can grant habeas relief only if the state court's adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1) (1996).[6]

## III.

As the state correctly notes, the scope of federal habeas review is limited by the intertwined doctrines of procedural default and exhaustion. Procedural default exists where (1) a state court clearly and expressly bases its dismissal of a claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal,[7] or (2) the petitioner fails to exhaust all available state remedies, and the state court to which he would be required to petition would now find the claims procedurally barred. *See Coleman*, 501 U.S. at 735 n.1. In either instance, the petitioner is deemed to have forfeited his federal habeas claim. *See generally O'Sullivan v. Boerckel*, 119 S. Ct. 1728 (1999).

In its original answer to the federal habeas petition, the state admitted "that Bledsue has sufficiently exhausted his state remedies as required by 28 U.S.C. § 2254(b) and (c)."

---

[6] *See Jackson v. Johnson*, 150 F.3d 520, 522 (5th Cir. 1998), *cert. denied*, 119 S. Ct. 1339 (1999). Bledsue satisfies the "in custody" requirement of AEDPA because there is a demonstrable relationship between his conviction, which is the subject of this petition, and his present incarceration. *See* 28 U.S.C. § 2254(a) (1996); *Peyton v. Rowe*, 391 U.S. 54 (1968); *Escobedo v. Estelle*, 655 F.2d 613, 614 (5th Cir. Unit A Sept. 1981).

[7] *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Harris v. Reed*, 489 U.S. 255, 262-63 (1989); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977); *Nobles*, 127 F.3d at 420.

Consequently, the state has waived any independent exhaustion argument, as well as the exhaustion argument included within the doctrine of procedural default——specifically, ground (2) above.[8] We therefore consider only whether Bledsue's claim is procedurally barred under ground (1), i.e., whether the state court expressed an independent and adequate state law ground for dismissal.

According to the state, the district court should have refused to consider Bledsue's sufficiency claim regarding the *weight* of the amphetamine, because the only time Bledsue raised any issue regarding weight was in his third state habeas petition, which was expressly dismissed on an independent and adequate procedural ground (successive writs). The state asserts that in his direct appeal to the intermediate state court of appeals and in his second habeas petition to the Court of Criminal Appeals, Bledsue focused only on the *intent* element and raised no challenge to the sufficiency of the evidence regarding *weight*. Consequently, contends the

state, the district court granted relief on an issue advanced only in Bledsue's third habeas petition, which was expressly dismissed on the independent and adequate state law ground of abuse of the writ.

The district court, however, concluded that the overall issue of sufficiency of the evidence——not just sufficiency as to the issue of intent——was presented in Bledsue's direct appeal and in his second state habeas petition. We agree. Although we recognize that the plain language of Bledsue's direct state appeal and second state habeas petition did not explicitly pinpoint the issue of weight, his claim of insufficient proof of intent implicitly presented the issue of weight. Admittedly, we so conclude generously, because Bledsue is a *pro se* petitioner, and in this circuit *pro se* habeas petitions are construed liberally and are not held to the same stringent and rigorous standards as are pleadings filed by lawyers.[9] To that end, we accord Bledsue's state and federal habeas petitions a broad interpretation, notwithstanding the later appointment of counsel.[10]

Accordingly, finding guidance from *Brown v. Collins*, 937 F.2d 175 (5th Cir. 1991), we conclude that Bledsue amply raised an overall challenge to the sufficiency of the evidence in his state petitions. The petitioner in *Brown* argued on direct appeal to the state court that the state had failed to carry its burden of proving armed robbery, because it had "proved only that [he] was near the scene of the robbery." Later, in a federal habeas petition, Brown argued that the prosecution had not proven an essential element of armed robbery, specifically, that he had used or exhibited a firearm.

---

[8] Both in oral argument and in its brief, the state insists that Bledsue's failure to seek discretionary review constitutes procedural default. *See Richardson v. Procunier*, 762 F.2d 429, 432 (5th Cir. 1985) ("We hold that a Texas inmate seeking federal habeas relief who, in directly appealing his state criminal conviction, has by-passed the Texas Court of Criminal Appeals will not be deemed to have exhausted his state remedies until he has raised his claims before the state's highest court though collateral review provided by state habeas proceedings."). We conclude that this theory addresses the exhaustion issue and has been waived by the state.

Even if there had been no waiver, however, the state's argument would fail, because at no time have we suggested that pursuing relief in the Court of Criminal Appeals in both a petition for discretionary review and in an application for a writ of habeas corpus is necessary to satisfy the exhaustion requirement. *See Myers v. Collins*, 919 F.2d 1074, 1076 (5th Cir. 1990). Only one avenue of post-conviction relief need be exhausted, and Bledsue has done so in his application for habeas relief to the Court of Criminal Appeals.

[9] *See Martin v. Maxey*, 98 F.3d 844, 847 n.4 (5th Cir. 1996); *Guidroz v. Lynaugh*, 852 F.2d 832, 834 (5th Cir. 1988); *Woodall v. Foti*, 648 F.2d 268, 271 (5th Cir. Unit A June 1981).

[10] *See Humphrey v. Cain*, 120 F.3d 526, 530 n.2 (5th Cir. 1997), *rehearing en banc*, 138 F.3d 552 (5th Cir.), *cert. denied*, 119 S. Ct. 348 (1998).

Even though the state petition challenged a different element of armed robbery, we held that the federal challenge to the sufficiency of the evidence was subsumed within Brown's sufficiency claim on direct appeal. *See Brown,* 937 F.2d at 179. Guided by *Brown*, we likewise find that the mainstay of Bledsue's direct appeal and state habeas petition was a challenge to the overall sufficiency of the evidence to sustain his conviction for possession of twenty-eight grams or more of amphetamine.[11]

We now consider whether the Court of Criminal Appeals clearly and expressly dismissed Bledsue's claim on an "independent and adequate" state procedural ground, such that the claim is procedurally barred in federal court, when it denied his application "without written order." Drawing from a long line of precedent, the Court in *Coleman v. Thompson*, 501 U.S. 722 (1991), elaborated on the "independent and adequate" state law doctrine, which aids federal courts in determining when to exercise habeas review. The Court held:

> In habeas, if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state law ground, a federal court may address the petition.

*Id.* at 735.

---

[11] *See also Vela v. Estelle*, 708 F.2d 954 (5th Cir. 1983), on which the district court relied. There, a *pro se* petitioner filed a federal habeas claim alleging ineffective assistance of counsel, but the petition alleged a number of trial errors that were not specifically mentioned in his state habeas claim. *See id.* at 957-58. The state argued that the federal claim was procedurally barred, as it had not been made in state court, but we held that a general claim of ineffective assistance of counsel in the state petition was sufficient to invoke a full study of individual factual claims found in the available state court records. *See id.* at 960.

On the same day *Coleman* was decided, the Court issued *Ylst v. Nunnemaker*, 501 U.S. 797 (1991), which clarifies *Coleman* and addresses the problem that arises when a state court issues an unexplained order, neither disclosing nor insinuating the reason for its judgment. The Court created a presumption to be applied by federal courts when they are unable to determine whether the state court opinion "fairly appeared to rest primarily upon federal law." *See id.* at 803 (quoting *Coleman*, 501 U.S. at 740).

Termed the "look through" doctrine, this presumption enables federal courts to ignoreSSand hence, look throughSSan unexplained state court denial and evaluate the last reasoned state court decision. When one reasoned state court decision rejects a federal claim, subsequent unexplained orders upholding that judgment or rejecting the same claim are considered to rest on the same ground as did the reasoned state judgment. The Court explained:

> The maxim is that silence implies consent, not the oppositeSSand courts generally behave accordingly, affirming without further discussion when they agree, not when they disagree, with the reasons given below. The essence of unexplained orders is that they say nothing. We think that presumption which gives them no effectSSwhich simply "looks through" them to the last reasoned decisionSSmost nearly reflects the role they are ordinarily intended to play.

*Id.* at 804.

The Court of Criminal Appeals responded to Bledsue's second habeas petition by simply stating, "Application denied without written order." The state argues that this denial stems from the longstanding Texas procedural rule that prohibits the Court of Criminal Appeals from entertaining sufficiency of the evidence

claims on habeas review.[12]

Although the Court of Criminal Appeals generally refuses to entertain sufficiency challenges on collateral review, the mere existence of a procedural default does not deprive federal courts of jurisdiction. *See Shaw v. Collins*, 5 F.3d 128, 131 (5th Cir. 1993). Quite to the contrary, to prohibit our collateral review the state court must have *expressly* relied on the procedural bar as the basis for disposing of the case. Here, the disposition by the Court of Criminal Appeals presented no such expression and no explanation, so we cannot identify the element of clear and express reliance on a state procedural rule to preclude review in federal court.

Indeed, the Court of Criminal Appeals has explained that "'[i]n our writ jurisprudence, a "denial" signifies that we addressed and rejected the merits of a particular claim while "dismissal" means that we declined to consider the claim for reasons unrelated to the claim's merits.'"[13] Here, that court "denied" the

habeas application, thereby signifying its rejection of the meritsSSalbeit for no additional reasons, but certainly not expressly on the basis of an independent and adequate state procedural ground. Under *Coleman*, we must treat this "denial" as a merits adjudication of Bledsue's state habeas petition that raised the same constitutional challenge to the sufficiency of the evidence as he raised in the district court and as he brings to us today.[14]

Additionally, under *Ylst*, we must "look through" the Texas court's denial to the ruling of the last state court to render a reasoned decision. When we do so, we find that the state court denied Bledsue's requests not on a procedural ground but on the merits.

The intermediate state court of appeals, on direct review, conducted a sufficiency of the evidence examination in which it noted that "we must review *all of the evidence* in the light most favorable to the verdict." Although that court ultimately found the evidence sufficient to establish guilt, it nevertheless performed an analysis on the merits to reach that finding. As we "look through" the denial by the Court of Criminal Appeals to the reasoned intermediate appellate opinion, we again conclude that Bledsue's claim was denied on the merits, i.e., was not denied on an independent and adequate state ground. We therefore conclude that the sufficiency of the evidence claim does not fall prey to the procedural bar and is properly before the federal courts.

IV.

In arguing insufficiency, Bledsue claims the state failed to prove he possessed more than twenty-eight grams of amphetamine because his indictment did not contain the phrase "including adulterants and dilutants." Even

---

[12] *See Renz v. Scott*, 28 F.3d 431, 432 (5th Cir. 1994); *Clark v. Texas*, 788 F.2d 309, 310 (5th Cir. 1986); *Ex parte McWilliams*, 634 S.W.2d 815, 818 (Tex. Crim. App. 1982). The state's reliance on *Renz* is misplaced. There, the state habeas trial court refused to reach the sufficiency of the evidence claim explicitly based on a state procedural rule, and the Court of Criminal Appeals denied relief "on the findings of the trial court." *Renz*, 28 F.3d at 432. The state habeas trial court plainly denied Bledsue's second petition on the merits, and the Court of Criminal Appeals denied the petition "without written order." We find these two results inapposite and glean no support for the state's position.

[13] *Ex parte Thomas*, 953 S.W.2d 286, 289-90 (Tex. Crim. App. 1997) (citing *Ex Parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)); *compare Jackson*, 150 F.3d at 524 ("The court of conviction ruled explicitly on the merits and the denial of relief [without written reasons] by the Court of Criminal Appeals serves, under Texas law, to dispose of the merits of the claim.") *with Coleman*, 501 U.S. at 744 (relying on the nature of the disposition as a "dismissal" to find that the (continued...)

(...continued)
basis was solely procedural).

[14] The failure to prove guilt beyond a reasonable doubt constitutes a denial of due process. *Jackson v. Virginia,* 443 U.S. 307 (1979); *In re Winship*, 397 U.S. 358, 364 (1970).

though his jury charge allowed the state to include adulterants and dilutants in calculating the total weight of amphetamine, Bledsue points out that Texas courts have required jury charges to correspond to the elements of the offense set forth in the indictment.[15] Relying on this rule, Texas courts have specifically held that for a conviction to survive a sufficiency challenge, the phrase "adulterants and dilutants" must be included in both the indictment and the charge. *See Dowling v. State*, 885 S.W.2d 103, 109 (Tex. Crim. App. 1992). Therefore, Bledsue avers that the evidence was insufficient to convict him under *Jackson*, because "no rational trier of fact could have found proof beyond a reasonable doubt" that he was guilty of the essential elements of the crime for which he was charged: possessing 28 or more but less than 400 grams of amphetamine. *See Jackson*, 443 U.S. at 324.

### A.

This court last considered the effect of the *Benson/Boozer* rule on federal habeas review in *Brown*, in which a defendant sought habeas relief because the theory of liability in the jury charge differed from that presented at trial. The *Brown* court, 937 F.3d at 182, squarely held that a technical violation of the *Benson/Boozer* rule "does not rise to [the] constitutional heights" justifying federal habeas intervention. Obedient to *Jackson*, we held that on habeas review, federal courts should look only to the substantive elements of the offense defined by state law, and not to state procedural requirements, when measuring the sufficiency of the evidence. *See Brown*, *id.* at 181. Conceding that Brown had shown a violation of state law, we nevertheless denied habeas relief, because the statute used to convict permitted conviction based on the theory of liability presented at trial and because the jury charge gave general

instructions on this theory.[16]

Similarly, the statute used to convict Bledsue authorized the inclusion of adulterants and dilutants in calculating the amount possessed, and the charge gave instructions to consider "adulterants and dilutants". Therefore, *Brown* requires reversal of habeas relief here, because Bledsue has not shown that the omission of the phrase "adulterants and dilutants" in his indictment is anything more than a violation of the *Benson/Boozer* rule unworthy of habeas relief.

### B.

Bledsue argues, however, that *Malik v. State*, 953 S.W.2d 234 (Tex. Crim. App. 1997), modifies the *Benson/Boozer* rule and elevates it from a procedural nuance to an essential element requiring federal habeas protection. Essentially, Bledsue asks us to overrule *Brown* on the basis of the change in Texas law effected in *Malik*. We decline, however, to expand the scope of our review of Texas cases by incorporating the *Malik* rule into our federal habeas jurisprudence.

In *Malik*, *id.* at 240, the court abolished the "*Benson/Boozer*" rule in favor of a rule requiring sufficiency of the evidence to be measured by the "elements of the offense as defined by the hypothetically correct jury charge for the case." A "hypothetically correct jury charge . . . accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* Bledsue reasons that because this new standard requires the state to prove the elements of the crime set forth in the indictment, a failure to meet the *Malik* standard is tantamount to failing the constitutional sufficiency-of-the-evidence test.

---

[15] The Court of Criminal Appeals has called this rule the "*Benson/Boozer*" doctrine in reference to a line of cases beginning with *Benson v. State*, 661 S.W.2d 708 (Tex. Crim. App. 1982), and *Boozer v. State*, 717 S.W.2d 608 (Tex. Crim. App. 1984).

[16] See id. at 183 ("Although the evidence did not conform *strictly* to the theory of culpability as alleged in the indictment . . . we hold that the evidence sufficed to prove the substantive elements of aggravated robbery under the law of parties as charged generally in the court's instructions.").

7

Bledsue contends that, in general, *Malik* actually *benefits* the state, because the state simply has to prove the elements in the indictment. Thus, unlike defendants subject to the "*Benson/Boozer*" doctrine, defendants post-*Malik* cannot challenge convictions of illegal handgun possession on the basis of concerns over the legality of their detention, because the detention is not an essential element discussed in the indictment. *See Malik*, 953 S.W.2d at 240. Similarly, the defendant in *Brown* would not have been able to challenge the theory of liability raised in the jury instructions because, under *Malik*, the state proved the charges raised in a "hypothetically accurate" instruction.[17] Because *Malik* now conforms to the "essential elements" required by *Jackson*, Bledsue argues, we cannot dismiss the *Malik* rule as a mere procedural nuance.

In many cases, the *Malik* rule will produce an accurate list of the "essential elements" that *Jackson* requires federal courts to review during habeas proceedings. *Jackson*, however, does not necessarily require that, for constitutional sufficiency, the elements stated in the indictment govern which "essential elements" must be measured against the evidence. *Jackson* requires only that the review occur "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S. at 324 n.16.

Although the indictment is central to figuring out which laws are being charged, an ambiguously drafted indictment may make it difficult to identify which "substantive elements" need to be proven for constitutional sufficiency. The *Malik* court recognized this problem:

> [M]easuring sufficiency by the indictment is an inadequate substitute because some important issues relating to sufficiencySSe.g. the law of parties and the law of transferred intentSSare not contained in the indictment. Hence, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case.

953 S.W.2d at 239-40.

Bledsue's case provides an example of how the indictment can inadequately set out the elements of the offense. The state indicted Bledsue for knowingly and intentionally possessing amphetamine in a quantity of at least 28 but less than 400 grams, but the indictment did not state whether the weight included adulterants or dilutants. The magistrate judge correctly found that in reviewing for sufficiency pre-*Malik*, Texas courts will refuse to consider adulterants and dilutants unless the indictment specifically includes the words "adulterants and dilutants." *Dowling*, 885 S.W.2d at 109.

Post-*Malik,* however, it is uncertain whether Texas courts would require that phrase in the indictment to convict Bledsue, because the old requirement of matching the

---

[17] We respectfully disagree with the dissent's suggestion that *Brown* should apply only to situations in which the defendant benefits from an inconsistency between the evidence and the jury instruction. The *Brown* court gave no indication it would fail to apply the same analysis to a case in which the state benefits from the inconsistency. Rather, *Brown* focused on how the evidence supported the substantive elements of the charge, even if there were procedural irregularities, and did not limit its holding to cases in which the defendant benefits.

Indeed, following *Jackson*, the decisive question in analyzing potential "procedural nuances" is not whether they work in favor of or against defendants. Rather, because *Jackson* is concerned solely with the sufficiency of the evidence needed to sustain a conviction, *see Jackson*, 443 U.S. at 318, the key issue is whether "adulterants and dilutants" is an essential element for purposes of constitutional sufficiency review. Which party benefits from the potential "procedural nuance" is not significant to this analysis.

8

jury charges and indictment no longer exists.[18] A Texas habeas court reviewing under *Malik* must develop a hypothetically correct jury charge that both "accurately sets out the law" and "is authorized by the indictment." *Malik*, 953 S.W.2d at 240. In this case, a hypothetically correct jury charge that "accurately sets out the law" would have included the phrase "adulterants and dilutants" but would not be "authorized by the indictment."

Perhaps, to meet *Malik*, a Texas court simply would require the hypothetically correct jury charge to be based on a hypothetically correct indictment. At the very least, when the indictment raises ambiguities as to what the hypothetically correct jury charge should be, the *Malik* approach does not resolve a federal habeas court's inquiry into what are the essential elements of state law we should use to review Bledsue's conviction.

This quandary teaches us, on habeas review, to maintain our own notions of constitutional sufficiency that are not overly dependent on state law doctrines such as that enunciated in *Malik*. Rather, federal habeas courts should independently analyze the governing statute, the indictment, and the jury

charge to measure the constitutional sufficiency of the evidence and determine what are the *essential elements* required by the *Jackson* sufficiency inquiry.

### C.

Therefore, while we decline to adopt the *Malik* rule as a measure of constitutional sufficiency, we still consider whether "adulterants and dilutants" constitute an "essential element" for the purpose of federal habeas review. If we decide that "adulterants and dilutants" are an essential element under *Jackson*, then the district court properly granted habeas relief, because no rational jury could have found the evidence sufficient to convict Bledsue of possessing more than twenty-eight grams of pure amphetamine. To make this determination, we look to "substantive elements of the crime" as defined in the statute used to convict Bledsue, and we seek guidance from the Supreme Court's recent teachings on how to construe criminal statutes.

In *Jones v. United States*, 119 S. Ct. 1215 (1999), the Court construed 18 U.S.C. § 2119, the federal car-jacking statute, as creating three separate offenses. The statute provides that when a person takes a motor vehicle by force and while possessing a firearm, the punishment is (1) not more than 15 years if the victim suffered no serious bodily injury; (2) not more than 25 years if he suffered serious bodily injury; and (3) not more than life imprisonment if he died as a result of the car-jacking. The Court rejected the government's contention that § 2119 be read to create one offense with three separate punishments and held that "under the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment, any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt." *Id.* at 1224 n.6.

The defendant in *Jones* was indicted and convicted under § 2119, but at trial no evidence regarding injury to the victims was produced. At sentencing, however, the court

---

[18] Some post-*Malik* cases indicate that Texas courts will continue to require the language of the jury charge to conform to the indictment, especially where the indictment leaves out a theory of liability. *See Harris v. State*, 1998 Tex. App. LEXIS 3430 (Tex App.§§Houston [14th Dist.] 1998, no writ) (unpublished) (finding evidence insufficient to sustain conviction where broader theory of liability was introduced into jury charge); *Williams v. State*, 980 S.W.2d 222, 224 (Tex. App.§§Houston [14th Dist.] 1998, writ ref'd) (requiring state to follow indictment language charging use of "firearm"). Bledsue's case is somewhat different, because the language of his indictment is ambiguous as to whether adulterants and dilutants are included in the alleged amphetamine possession. Even if Texas courts would require the insertion of such language in the indictment, however, this requirement does not reach the level of constitutional sufficiency required for federal habeas intervention.

found that the defendant had indeed caused serious bodily injury, pursuant to the second subsection of § 2119, and sentenced him to twenty-five years. To avoid constitutional concerns, the Court construed the separate subsection creating serious punishments for causing "serious bodily injuries" to constitute a separate, independent offense. In doing so, the Court held that the question whether the defendant had caused serious bodily injury must be determined by the jury.

Like the one in *Jones*, the statute authorizing Bledsue's conviction sets out three levels of punishment for possession of certain illegal substances, depending on the quantity possessed: (1) Possessing less than 28 grams, including adulterants and dilutants, is a third-degree felony; (2) possessing more than 28 grams but less than 400 grams, including adulterants and dilutants, is an aggravated felony punishable by up to 99 years but no less than 5 years; (3) possessing more than 400 grams, including adulterants and dilutants, is an aggravated felony punishable by up to 99 years but no less than 10 years.[19] We read this statute as creating three separate offenses rather than one offense with three punishments, thus avoiding the constitutional concerns expressed in *Jones*.

Therefore, the state would violate Bledsue's Sixth Amendment jury trial rights if it proved that he possessed less than 28 grams, then convinced the court to impose a heavier sentence based on a non-jury finding that he possessed more than 28 grams. In other words, because the *amount* of the controlled substance possessed determines the severity of punishment, the *amount* possessed is a jury question and an essential element under *Jones* and *Jackson*. But nothing in *Jones* suggests that we must read "adulterants and dilutants" as an essential element of the crime for which Bledsue was convicted.

Acknowledging that § 481.116 creates three separate offenses, we nevertheless do not conclude that the omission of "adulterants and dilutants" creates a separate criminal offense. Each of the three offenses in the statute describes the amount of the controlled substance as "including adulterants and dilutants." In *Jones*, the penalty varied with respect to the level of harm caused to the victims. The problems arose when the jury considered facts supporting one offense, while the sentencing court considered facts supporting an entirely different offense.

Here, the penalty varies with respect to the amount of controlled substances possessed and does not depend on whether adulterants and dilutants are included. According to § 481.116, adulterants and dilutants are *always* included for purposes of calculating the amount possessed. Therefore, even under *Jones*, Bledsue could not have been convicted of possessing less than twenty-eight grams, because "adulterants and dilutants" are *always* included in the calculation of the amount possessed.

If the grand jury had indicted Bledsue for possessing less than twenty-eight grams, but the jury had been instructed that it could convict him of possessing more than that amount, federal habeas relief would be more likely, because, under *Jones*, the indictment would have charged a crime different from the one for which he was convicted. But here, it was not possible for the grand jury to have indicted Bledsue for a different crime, because the lowest possible offense created by the statute still includes adulterants and dilutants in calculating the amount possessed.[20]

_____

[19] *See* TEX. HEALTH AND SAFETY CODE § 481.116(b, c) (West 1992). This provision was amended in 1993. *See* Acts 1993, 73d Leg., ch. 900, § 2.02.

[20] The dissent colorfully describes our analysis of this issue as an "exercise of semantically chasing one's tail. . ." because such analysis would also fail to find "possession" and "weight of amphetamine" an essential element. We believe, respectfully, that the dissent misses the point of *Jones*.

In *Jones*, the government in *Jones* urged the

(continued...)

Therefore, for purposes of federal habeas review, the state provided sufficient evidence for a rational trier of fact to find guilt beyond a reasonable doubt. Under *Brown*, our review for constitutional sufficiency should ask only "whether the evidence was constitutionally sufficient to convict [Bledsue] of the crime charged, not whether a state appellate court would have reversed his conviction . . . ." *Brown*, 937 F.2d at 181. Whatever the complexities raised by the new *Malik* approach to analyzing indictments and jury charges and by *Jones*, the fact remains that "with explicit reference to the substantive elements of the criminal offense," the state produced sufficient evidence to convict. Accordingly, we will not grant habeas relief based on the grand jury's omission of a non-essential element of Bledsue's offense.

The judgment granting habeas corpus relief is REVERSED, and judgment is RENDERED, denying habeas relief.

---

(...continued)
Court to construe the statute as a single offense with three separate punishments. The Court refused to read the statute to diminish the jury's "control over facts determining a statutory sentencing range." *See Jones*, 119 S. Ct. at 1215. Because the seriousness of bodily injury was a factual determination that would affect the statutory sentencing range, the Court found this factor to be an essential element, but not simply because it was found in the statute.

*Jones* does not teach us that *every* phrase in a statute is an "essential element." Rather, it simply asks courts to look carefully at elements that could increase the statutory sentencing range.

In fact, we can easily read the statute to mean that calculations of the amount of amphetamines *always* includes adulterants and dilutants. The fact that the term is included in all three sections of the statute means that it is not a factor that would increase the sentence; therefore, *Jones* does not lead us to construe "adulterants and dilutants" as an essential element.

JACQUES L. WIENER, JR., Circuit Judge, concurring in part and dissenting in part:

I agree with my colleagues of the majority that we have jurisdiction to review the district court's disposition of Bledsue's federal habeas corpus petition, and that the case is in the proper procedural posture for us to hear it. I respectfully dissent from the majority opinion, however, because I cannot agree with its sufficiency of the evidence analysis or with its conclusion that the variance between the state's indictment of Bledsue and the trial court's jury charge — which effectively lowered the state's burden of proof — is merely a "procedural nuance," unworthy of constitutional protection. I must also dissent from the majority's conclusion that "adulterants and dilutants" are not essential elements of the offense that, <u>when relied on by the state to obtain a conviction</u>, must have been pleaded in the indictment. I find this assertion incompatible with the Supreme Court's recent holding in <u>Jones v. United States</u>,[21] which requires <u>any fact that</u>

---

[21]119 S. Ct. 1215 (1999).

increases the maximum penalty for a crime be (1) charged in the indictment, (2) submitted to a jury, and (3) proved beyond a reasonable doubt.

It is axiomatic that the Due Process Clause protects an accused against conviction unless facts necessary to demonstrate the presence of each element of the crime of which he is charged are proved beyond a reasonable doubt.[22] In the face of this immutable constitutional principle, the majority opinion nevertheless dismisses the state's failure to prove an essential element of the offense — the weight of the amphetamine as charged in the indictment — beyond a reasonable doubt by trivializing the omission of the integral statutory component, "including adulterants and dilutants," with the label "procedural nuance" and thereby relegating it to a point below the threshold of constitutional scrutiny. I am convinced that, in doing this, the majority so broadens and exalts our holding in Brown v. Collins[23] that the constitutional standards and purposes articulated by the Supreme Court in Jackson v. Virginia[24] are diminished to the point of inefficacy in situations such as this.

The Jackson Court established the framework to be used by federal courts reviewing habeas corpus petitions in which a prisoner challenges a state court conviction on grounds of insufficiency of the evidence.

Focusing on the Fourteenth Amendment's Due Process protection, the Court held that habeas relief is warranted "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."[25] In so holding, however, the Jackson Court also recognized the potential for federal intrusion on a state's power to define criminal offenses and therefore directed that the prescribed standard be applied in every instance "with explicit reference to the substantive elements of the criminal offense as defined by state law."[26] For over twenty years now, this deliberate intertwining of federal constitutional law and state substantive criminal law has served to vacate the convictions of those who, though factually culpable, are legally innocent of a state crime as charged — a constitutionally assumed societal risk that lies at the very heart of the Due Process Clause.

Today, however, I read the majority opinion as frustrating the dictates of Jackson by over-emphasizing — and thereby over-empowering — portions of our opinion in Brown, despite a plethora of factual distinctions from the instant case — distinctions that, I submit, do make a difference. In Brown as here, we examined a habeas petition grounded on a claim of insufficient evidence to support a state court conviction. The most prominent

---

[22]In re Winship, 397 U.S. 358, 364 (1970).
[23]937 F.2d 175 (5th Cir. 1991).
[24]433 U.S. 307 (1979).

---

[25]Id. at 324.
[26]Id. at 324 n. 16 (emphasis added).

feature of <u>Brown</u>, though, is a flawed jury charge that impermissibly <u>increased</u> the <u>state's</u> burden of proof to an unattainable level, resulting in a "windfall" acquittal — based on constitutionally insufficient evidence — for a defendant who was factually guilty of the crime <u>actually charged in the indictment</u>.[27] As the wrongly-heightened proof burden thus placed on the state would have enabled the defendant "to walk" on a technicality, we applied the label "procedural nuance" to the variance between the theory of the case presented at trial and the theory of the case stated in the faulty jury instructions. We thus distinguished it from an essential element of the offense as required by <u>Jackson</u>, and we denied habeas relief.[28]

Key legal and factual differences between Brown's case and Bledsue's block my agreeing with the majority that <u>Brown</u> governs this case. First and most significantly, the instructions given the jury at Bledsue's trial impermissibly <u>lowered</u> the state's burden of proof for the crime for which Bledsue was indicted — a diametrically opposite circumstance from the <u>heightened</u> proof burden placed on the state in <u>Brown</u>. The factor improperly inserted into Bledsue's jury charge (instructing the jury that it could include the weight of adulterants or dilutants in determining whether Bledsue

possessed 28 grams or more of the controlled substance) gave the state the easy ability to prove the statutorily-required weight of amphetamines necessary to obtain a conviction under an indictment that made no mention of such additives.

Texas law defines the quantity element of its drug possession crimes by weight: Possessing 0 to 28 grams is an essential element of a crime of possession that is a mere "third degree felony," distinguishing it from a separate and distinct crime of possession that is a more heinous "aggravated felony," an essential element of which is possessing 28 to 400 grams. In both crimes, the statute allows, but does not require, the state to ease its burden of proving the weight of the substance possessed by cumulating "adulterants and dilutants" with the pure substance when calculating the quantity. But, I submit, if the state elects to use such additives, it must track the statute and expressly include "adulterants and dilutants" in the indictment. Failing that (as here), the state must prove the quantity on the basis of the pure substance alone.

Second, Bledsue's indictment omitted an <u>element of the crime</u>, adulterants and dilutants, in contrast to the omission of the state's <u>theory of the case</u> in <u>Brown</u>, clearly not an essential element of the crime. Consequently, Bledsue's conviction was vacated by the federal district court (correctly, I believe) <u>not</u> on the basis of a <u>procedural</u> technicality, but because the

---

[27]<u>Brown</u>, 937 F.2d at 182.
[28]<u>Id.</u> at 181–82.

14

essential, <u>substantive</u> weight element of the offense, as charged in the indictment, had not been proved. Moreover, to a legal certainty, it could not have been proved by the state without the trial court's departing from the indictment by (1) allowing evidence of additives to be presented to the jury <u>and</u> (2) instructing the jury to include the weight of those additives when calculating the weight of the controlled substance. This was done by Bledsue's state trial court despite the absence in the indictment of any reference whatsoever to either (1) the statute that defines the crime, <u>i.e.</u>, no incorporation by reference, or (2) "adulterants or dilutants."

I am not the first to recognize the critical importance of the threshold question, "which party benefits from an improper jury charge" when considering constitutional sufficiency of the evidence on habeas. Recently, the highest criminal court in Texas, in <u>Malik v. State</u>,[29] recognized the inconsistency stemming from the application of a sufficiency review depending on which party —— the state or the defendant —— has benefitted from questionable jury instructions. To eliminate these inconsistencies and produce a single, coherent standard, the court in <u>Malik</u> overruled one prong of prior state precedent, the prong that had awarded defendants acquittals after the state failed to object to a jury

charge that <u>increased</u> its own burden of proof (even though the state had factually proved its case). <u>Malik</u> created a new sufficiency of the evidence standard, one designed to permit an acquittal to stand or a conviction to be reversed only when the state actually fails to prove the offense <u>charged in the indictment</u>.[30]

I read today's majority opinion as disregarding the <u>Malik</u> court's approach to the constitutional sufficiency of the evidence analysis under <u>Jackson</u>, despite the Court's instruction in <u>Jackson</u> that we are to rely on substantive state criminal law when reviewing a state conviction for constitutional sufficiency. The majority says that "[w]e decline [] to expand the scope of our review of Texas cases by incorporating the <u>Malik</u> rule into our federal habeas jurisprudence." As I read <u>Malik</u>, however, the highest criminal court of Texas confected its rule in an express effort to align that state's sufficiency of the evidence analysis with the federal sufficiency analysis decreed in <u>Jackson</u>. The majority's failure to focus on this state/federal nexus in <u>Jackson</u> offends the principles of federalism, ironically, a goal later espoused by the majority as a reason to deny habeas relief to Bledsue. It has been said that "[i]f the Federal Government in all or any of its departments are to prescribe the limits of its own authority, and the States are bound to submit to this

---

[29]953 S.W.2d 234 (Tex. Crim. App. 1997).

[30]<u>Id.</u> at 239-40.

15

decision, and are not to be allowed to examine and decide for themselves when the Constitution shall be overleaped, this is practically 'a government without limitation of powers.'"[31]

As I see it, the majority expands its power and further exacerbates the deprivation of Bledsue's constitutional rights by concluding — without regard to the glaring inconsistency between the indictment and the jury charge —— that "adulterants and dilutants" are not essential elements of the crime under Jackson, as necessary for federal habeas review. The majority concedes, as I insist, that the statute under which Bledsue was convicted creates three separate offenses, each with at least one separate element, not one offense with three gradations of punishment. Regardless of the fact that each offense contains separate elements, however, the majority sees a distinction between the amount of amphetamine possessed, which it acknowledges to be an essential element of the offense, and "adulterants and dilutants," which it insists are not. I cannot accept this distinction, however, as the amount of "adulterants and dilutants" is merely added to the amount of pure amphetamine to make up the total weight of possessed drugs necessary to support a conviction under any one of the

three separate offenses.

Earlier this year, the Supreme Court in Jones considered a criminal statute essentially identical in structure to the Texas statute that is at the heart of this case. The Court in Jones concluded that the degree of bodily injury, i.e. severe bodily injury or death, which resulted in a heightened penalty imposed on the criminal, was an element of the offense that must be (1) charged in the indictment, (2) submitted to the jury, and (3) proved beyond a reasonable doubt.[32] The statute under which Bledsue was convicted stands on all fours with the statute examined in Jones. Even though construction of the statute in this case arises in a different procedural context than that in Jones,[33] I am

---

[31]Robert V. Hayne, Speech in the United States Senate, 25 Jan. 1830, in Register of Debates of Congress 43, 58 (1830).

---

[32]Jones, 119 S. Ct. at 1228.

[33]Jones involved a direct criminal appeal of a federal conviction, which arose in the context of sentencing, while Bledsue's case is a post-conviction federal habeas attack on a state court conviction. In Jones, the Court sentenced the defendant based on a non-charged, non-jury finding that the victim suffered serious bodily injury. 119 S. Ct. at 1218. As the indictment did not charge the defendant with committing serious bodily injury and the jury was never asked to find that the defendant committed serious bodily injury, the Court concluded that Jones's
(continued...)

convinced that the same reasoning applies. As such, the weight of the possessed amphetamine, the incremental increases of which produce concomitant increases in the seriousness of the crime and the penalty imposed on the perpetrator, is one of the essential elements of the offense of conviction that, if relied on by the state to obtain a conviction, must be charged in the indictment and proved beyond a reasonable doubt. Conversely, if the state omits adulterants and dilutants from the indictment, the jury cannot rely on them in calculating the amount of drugs possessed. Obviously, the state can elect to charge in the indictment the essential weight element in either of two

---

(...continued)
Sixth Amendment right to a trial by jury was violated. Id. at 1226. The Court based its holding on the conclusion that serious bodily injury, a fact that increases the maximum penalty for the offense, was an essential element that must be charged in the indictment, submitted to a jury, and proved beyond a reasonable doubt. Id. at 1224 n.6. In Bledsue's case, the jury charge included the element "adulterants and dilutants." Relying on the negative pregnant drawn from the Court's holding in Jones, I am convinced that if the state allows the jury to consider an essential element of the crime that increases the maximum penalty, then that element must be charged in the indictment and proved beyond a reasonable doubt.

ways: the amphetamine alone or the amphetamine plus adulterants and dilutants. Either way, a valid charge results. But, under Jackson, the state cannot elect to charge possession of amphetamine alone, then switch and prove the weight of the pure-only substance charged by including evidence of the amount of adulterants and dilutants as well.

As I see it, the majority opinion today imposes an unyielding federal power over constitutional interpretation, but in a counterstroke supplants the Fourteenth Amendment by rubber-stamping a conviction that was obtained in the clear absence of proof beyond a reasonable doubt that the defendant committed the crime for which he was charged in the indictment. With all due respect, it is principally for this reason that I must dissent.

## I.
### FRAMEWORK

As the majority opinion adequately states the facts and replicates the procedural history, standard of review, and issue of procedural bar, I shall hereafter mention from time to time only small shards of those vessels as needed to complete a frame of reference. I am prepared, however, to take whatever time (and ink) is needed to illuminate the flaws I perceive in the majority opinion's disposition of this admittedly complex case. I begin with a further discussion of Jackson v. Virginia's sufficiency of the evidence analysis and the gloss that we put on it in Brown v. Collins. Based on the legal rules

17

espoused in those cases, I follow with consideration of those elements that I find must be included in a proper constitutional sufficiency review of Bledsue's state court conviction and the definition of his offense under Texas law, both statutory and jurisprudential, in context with what I perceive to be the importance of the Brown and Malik decisions to this case when they are read in pari materia. Then, with that legal framework in place, I analyze the merits of Bledsue's appeal in an effort to identify the pitfalls I perceive in the analysis advanced by the panel majority. Next, assuming that (as the majority concludes) the variance between the indictment and jury charge need not be factored into a sufficiency analysis, I explore the fundamental flaw that I discern in the majority's holding that, even when "adulterants and dilutants" are included in the instruction to the jury and used by it in calculating the weight of the possessed substance, the adulterants and dilutants are not essential elements of the offense of conviction that must be charged in the indictment. Finally, I take my position to its necessary conclusion by explaining my conviction that a harmless error analysis of this case fails to excuse the constitutional violation suffered by Bledsue.

## II.
### ANALYSIS
A.   Sufficiency Analysis
    Under Jackson v. Virginia

In reviewing challenges to constitutional sufficiency of the evidence, we begin with the well-known Jackson v. Virginia standard.[34] As noted, we must determine whether, in the light most favorable to the prosecution, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt,"[35] with "explicit reference to the substantive elements of the criminal offense as defined by state law."[36] When the Jackson Court formulated this standard, it re-emphasized the Fourteenth Amendment's guarantee that "no person shall be made to suffer the onus of a criminal conviction except upon sufficient proof," but contemplated the intrusion by federal courts into state convictions as a matter of finality and federal-state comity.[37] The Court concluded that finality of judgment should not be achieved at the expense of a constitutional right, stating:

---

[34]443 U.S. 307 (1979).
[35]Id. at 320.
[36]Id. at 324 n.16 (emphasis added).
[37]Id. at 316, 324 n.16.

18

The question whether a defendant has been convicted upon inadequate evidence is central to the basic question of guilt or innocence. The constitutional necessity of proof beyond a reasonable doubt is not confined to those defendants who are morally blameless. Under our system of criminal justice <u>even a thief is entitled to complain that he has been unconstitutionally convicted and imprisoned as a burglar</u>.[38]

---

[38]<u>Id.</u> at 323-24 (citations omitted) (emphasis added).

We have entertained numerous habeas petitions in which the <u>Jackson</u> analysis has been dutifully applied. In so doing, however, we have recognized a distinction between the crime's "substantive" elements under state law — which should be weighed under a <u>Jackson</u> analysis — and "procedural nuances" — which are undeserving of a <u>Jackson</u> review and need not be proved by the state to withstand a judgment of acquittal or the grant of a new trial on habeas review.[39] As such, the relevant inquiry under <u>Jackson</u> is "whether the evidence was constitutionally sufficient to convict [the defendant] <u>of the crime charged</u>, not whether a state appellate court would have reversed [the defendant's] conviction on the basis of a state procedural nuance foreign to federal constitutional norms."[40]

B.    <u>Elements of a Sufficiency Review</u>

Just as I agree with the majority that the starting point in this case is <u>Jackson v. Virginia</u>, I also agree that the quest for a state definition of the charged offense <u>starts</u> with the state statute. Where I part with the panel majority is its implied conclusion that we <u>stop</u> with the statute as well. I am satisfied that, for purposes of a <u>Jackson</u> analysis — at least in this case — "state law" is the product of both a Texas statute and that state's Common Law, <u>i.e.</u>, its jurisprudence.

1.  <u>The Statute</u>

I find a parsing of the applicable statutory provision helpful. The initial paragraph of § 481.116 of the Texas Health & Safety Code specifies that a person commits an offense if he knowingly or intentionally possesses a controlled substance listed in Penalty Group 2 (which includes amphetamine).[41] The several subsections that follow define separate, increasingly severe felonies with increasingly severe punishment levels, both based on the aggregate weight of the controlled substance possessed: An amphetamine offense falling within subsection (b)'s "less than 28 grams" is a "third degree felony"; an amphetamine offense falling within subsection (c)'s "28 grams or more" is an "aggravated felony."[42] Consequently, when, as here, the prosecution is proceeding under a subsection (c) "aggravated felony" — 28 grams or more — it must prove that the defendant (1) knowingly or intentionally (2) possessed (3) amphetamines in an amount of 28 grams or more but less than 400 grams. This is precisely what Bledsue's indictment specifies;

---

[39]<u>Brown</u>, 937 F.2d at 181.
[40]<u>Jackson</u>, 443 U.S. at 323-24 (emphasis added).

---

[41]Tex. Health & Safety Code Ann. § 481.116 (West 1992).
[42]Subsection (d) further subdivides the punishment ranges for the "aggravated felony" depending on whether the aggregate weight of the controlled substance is between 28 and 400 grams or greater than 400 grams.

and it does so without mention of "adulterants or dilutants," and without reference to the name or number of the statute that incriminates unlawful possession of the controlled substance.

2. Texas Common Law

After defining the necessary elements of Bledsue's crime as set forth in the applicable state statute, however, the majority fails to take the next logical step. This marks the initial point at which the majority and I part ways. We are in agreement that, from a plain reading of Jackson, we are required to measure sufficiency of the evidence with reference to the substantive elements of the criminal offense as defined by state law. But, "state law" is nowhere narrowly defined as a synonym for "state statute." It seems clear to me that the majority opinion repeatedly misconstrues the Jackson standard by measuring sufficiency of the evidence against the governing statute only — not the entire body of pertinent state law. Consequently, the majority implicitly dismisses Texas Common Law and thereby prohibits Texas from defining its own state law, in direct contravention of the Court's express concern in Jackson.[43] For this reason, I cannot agree

with the majority's implicit narrow definition of "state law" as used by the Court in Jackson.

Treating "state law" in the more comprehensive sense intended in Jackson brings me to an additional rule of criminal law engendered from the Texas Common Law. Notwithstanding § 481.116's inclusion of adulterants or dilutants in the calculation of the total weight of the controlled substance, Texas jurisprudence has firmly established that an indictment must contain the phrase "including adulterants and dilutants" before the state (or the jury) can use the weight of these additives in calculating the aggregate weight of the controlled substance.[44] Courts in Texas have consistently held that "[t]he state is bound by the allegations in its indictment and must prove them

---

[43]The Court presumed that consideration of state law in the sufficiency of the evidence standard would ensure that intrusions on the power of the states to define criminal offenses would not occur. Jackson, 443 U.S. at 324 n.16.

---

[44]See Dowling v. State, 885 S.W.2d 103, 109 (Tex. Crim. App. 1992) (en banc) (ordering acquittal because the indictment failed to contain the phrase "including adulterants and dilutants" and the state could not prove the pure amount of amphetamine as alleged in the indictment), decision clarified, 885 S.W.2d 114 (Tex. Crim. App. 1994); Reeves v. State, 806 S.W.2d 540, 543 (Tex. Crim. App. 1990) (en banc) (same), cert. denied, 499 U.S. 984 (1991); Farris v. State, 811 S.W.2d 577 (Tex. Crim. App. 1990) (en banc) (same); Cruse v. State, 722 S.W.2d 778, 780 (Tex. Crim. App. 1986).

21

beyond a reasonable doubt."[45] Our _Brown_ opinion notwithstanding, this jurisprudential rule is clearly substantive, not a mere procedural nuance; there is nothing procedural about it. Rather, it goes to the very core of requiring that the proof not vary from the indictment. Accordingly, if the grand jury does not return an indictment that contains the phrase "including adulterants and dilutants," the state must prove the weight of the controlled substance on the basis of pure amount alone or risk a judgment of acquittal or a reversal of conviction in a sufficiency of the evidence challenge, whether on direct appeal or habeas review. There is nothing harsh or burdensome about this rule when we stop to reflect on the fact that the wording of the grand jury's indictment is under the exclusive control of the state!

Nevertheless, the majority concludes that this well-established jurisprudential rule does not create an "essential element" of the offense, but is a "procedural nuance" that should not affect a constitutional analysis under _Jackson_. For support, the majority relies entirely on our opinion in _Brown v. Collins_,[46] and, without presenting much-needed analysis, holds that "_Brown_ requires reversal of habeas here." As I see myriad

distinguishing features between this case and _Brown_, I briefly set out the facts in _Brown_ before highlighting its differences.

3. Brown v. Collins

In _Brown_, the habeas petitioner had been convicted in state court of participating in an aggravated robbery by driving the get-away car. Consistent with the indictment, the jury was instructed that, to establish culpability, the state must prove that the defendant acted as a _principal_. The evidence adduced at trial, however, supported culpability only under a _party-accomplice_ theory.[47] On habeas, Brown conceded his guilt under Texas's party-accomplice rule but argued that the evidence had to conform to the _theory_ of responsibility submitted in the jury charge. As it did not, he insisted, his conviction should be overturned.[48]

Brown relied on the so-called _Benson/Boozer_ line of cases to argue that the evidence presented at trial must conform to the theory of responsibility expressed in the charge given to the jury, failing which, the court must enter a judgment of acquittal.[49] Beginning with

---

[45]_Cruse_, 722 S.W.2d at 780 (citing _Doyle v. State_, 661 S.W.2d 726 (Tex. Crim. App. 1983)).

[46]937 F.2d 175 (5th Cir. 1991).

---

[47]In its instruction, the court charged the jury on the law of parties generally, but this theory was not included in the "application paragraphs," which apply the relevant law to the specific facts of the case. _Brown_, 937 F.2d at 177.

[48]_Id._ at 180.

[49]_Id._ at 180. If the state objects to the erroneous jury charge and the court
(continued...)

Benson v. State,[50] and continuing in Boozer v. State,[51] the Texas Court of Criminal Appeals had held that the state's failure to object to a jury charge that unnecessarily increased the prosecution's burden of proof required it to prove the offense as described in the excessively burdensome jury charge; failure to do so would result in an acquittal based on insufficient evidence.[52] From these decisions emerged a line of cases that developed a dichotomy: Sufficiency of the evidence is measured by the jury charge if (1) the jury charge impermissibly increases the state's burden of proof — and is thus more favorable to the defendant, and (2) the state fails to object; conversely, sufficiency of the evidence is measured by the indictment if the unobjected-to jury charge impermissibly lowers the state's burden of proof — and is thus less

favorable to the defendant.[53]

Although we acknowledged the Benson/Boozer rule in Brown, we nevertheless found that a technical violation of this rule to be a mere procedural nuance that "does not rise to constitutional heights."[54] In so doing, we reasoned that, notwithstanding the improper jury instruction, the state clearly proved the elements of the Texas aggravated robbery statute and the "standard in Jackson demands no more."[55]

Attempting to draw similarities to Brown today, the majority asserts that the state clearly proved the elements in the statute, which authorized the inclusion of adulterants and dilutants, thereby establishing that the evidence is sufficient. Regardless of the fact that the state (not the defendant, as in Brown) received the benefit of its own inconsistency, the majority takes the position that Brown applies either way — irrespective of whether it

_____

(...continued)
nevertheless charges the jury on a higher burden, then the defendant is not entitled to acquittal, but the appellate court remands the case for a new trial. Id. at 181 n.8.

[50]661 S.W.2d 708 (Tex. Crim. App. 1982), overruled, 953 S.W.2d 234 (Tex. Crim App. 1997).

[51]717 S.W.2d 608 (Tex. Crim. App. 1984), overruled, 953 S.W.2d 234 (Tex. Crim App. 1997).

[52]Benson, 661 S.W.2d at 715-16; Boozer, 717 S.W.2d at 610-12.

_____

[53]See Malik v. Texas, 953 S.W.2d 234, 238-39 (Tex. Crim. App. 1997); Morrow v. State, 753 S.W.2d 372, 381-82 (Tex. Crim. App. 1988) (Onion, J., dissenting), cert. denied, 517 U.S. 1192 (1996). The second branch of the dichotomy — measuring sufficiency of the evidence by the indictment — has been overruled. I present a detailed analysis of the case that overruled this legal holding and the impact of the holding on Bledsue's case in subsection B.4.

[54]Brown, 937 F.2d at 181.

[55]Id. at 182 (emphasis added).

23

is the state or the defendant who receives the benefit. The majority reasons that in <u>Brown</u> we gave no indication that our analysis would only apply to situations in which the defendant benefitted from the inconsistent charge. To say, however, that <u>Brown</u>'s silence somehow creates a legal rule — without ever delving into the factual irregularities present in each case — is counterintuitive and also runs contrary to accepted methodology. A principal fallacy of this reasoning is its disregard of the difference between the relationship of the parties in a criminal case as distinguished from a civil case: In a criminal case <u>all</u> proof burdens are on the state; the defense can stand mute and prove nothing. What's "sauce" for the prosecution is <u>not</u> "sauce" for the defense.

I view portions of the discussion in <u>Brown</u> as supporting inferences contrary to the position taken today by the majority. For example, at the outset of that opinion, we described Brown's argument as finding support in the line of Texas cases that measure sufficiency of the evidence by the "jury charge given, failing which, the court must enter a judgment of acquittal."[56] The Texas cases cited for this proposition — <u>Nickerson</u>, <u>Stephens</u>, and <u>Benson</u> — all relate to but one side of the sufficiency of the evidence dichotomy, the one in which the <u>defendant</u> benefits from the improper jury charge by getting a windfall acquittal. Indeed,

in analogizing the situation in <u>Brown</u> to the one in <u>Nickerson</u>, we quoted <u>Nickerson</u> for the proposition that "'By not objecting to a charge which unnecessarily increased the state's burden of proof, the state deemed the charge correct and accepted the burden.'"[57] It is this "windfall" that we dismissed in <u>Brown</u> by dubbing it a "procedural nuance" because (1) it clearly deals with the <u>procedural default</u> issue of the state's failure to object, and (2) the defendant would gain an unjust acquittal from the state's failure to object, even though the state had definitively proved the substantive elements of its case under applicable state law. In Bledsue's case, there is no procedural default issue, and Bledsue gained no advantage by the variance; in fact, he suffered the ultimate disadvantage. And, again, in <u>Brown</u>, what the state proved matched the indictment, which is not the situation we consider today. For all these reasons, <u>Brown</u> is simply inapposite.

It seems obvious to me that, unlike civil litigation, we cannot hold criminal defendants to the same standard as the state when it comes to objecting to a jury charge in a criminal trial that decreases the state's burden of proof.[58]

---

[56]<u>Id.</u> at 180.

[57]<u>Id.</u> (quoting <u>Nickerson v. State</u>, 782 S.W.2d 887, 891 (Tex. Crim. App. 1990)).

[58]Even more compelling in this case, however, Bledsue <u>did</u> object to the improper jury charge at trial, placing the
(continued...)

In Brown, we did not contemplate a situation in which the jury charge benefitted the state and sufficiency was thus measured by the indictment, because Brown faced exactly the opposite circumstances. He was seeking sufficiency review measured by the jury charge even though the burden of proof in the jury charge benefitted him, not the state. Reading the holding in Brown to apply to obverse facts, i.e., when the state benefits from the improper jury charge, simply does not follow, either in law or in logic. In the context of constitutional proof beyond a reasonable doubt, the prosecution and the defense are not fungible.

Disregarded by the majority is another critical distinction in Brown that renders its application inapposite here. Unlike Brown, the instant case does not deal with the state's theory of responsibility, but with an actual element of the crime — the weight of amphetamine necessary to constitute the particular aggravated felony as charged in the indictment. Unlike the theory of parties in Brown, the phrase "including adulterants and dilutants," when relied on to obtain a conviction, is an integral, necessary component of an element of the offense — the weight or quantity of the amphetamine — required to obtain a conviction under one of three levels of possessory crimes expressed in the subject statute. I obviously would be

concurring in the majority opinion, not dissenting from it, if the indictment had expressly mentioned the additives or had incorporated them by reference to the statutory section that allows (but does not require) the state to include adulterants and dilutants; but the indictment did neither. We must rely on the clear and unambiguous words of the indictment to determine the elements of the crime actually charged — not the crime potentially "chargeable" — which, in Bledsue's case, indisputably did not include adulterants and dilutants for purposes of calculating the weight of the substance possessed.[59] And, clearly, the weight of the substance is the element that is unique to each of the different possession crimes under Texas law and determines what kind of felony has been committed. In this regard, I cannot overlook the fact that the state conducts the grand jury proceeding and actually writes the indictment. Presumably, the state knows its own statute and knew or should have known to include the permitted additives if it intended to use them to prove

---

(...continued)
state court on notice.

[59] See Leal v. State, 975 S.W.2d 636, 640 (Tex. Ct. App. 1998) ("[I]f any unnecessary language included in an indictment describes an essential element of the crime charged, the state must prove the allegation, though needlessly pleaded . . . .") (citing Burrell v. State, 526 S.W.2d 799, 802 (Tex. Crim. App. 1975)).

quantity. As it did not, we must assume objectively that in this instance the state was satisfied to deal strictly with pure amphetamine (even if, subjectively, omitting adulterants and dilutants was not intentional).

After a careful reading of Brown, I see significant differences in Bledsue's sufficiency of the evidence claim and Brown's —— differences that I believe elevate Texas's court-made rule above a mere "procedural nuance" to an "essential element of the offense" under Jackson. Additionally, even though the Brown decision may have hit the proverbial "nail on the head" at the time it was decided, its holding has been weakened by the Texas Court of Criminal Appeals's decision in Malik v. State,[60] which overruled the Benson/Boozer doctrine in an attempt to bring its state sufficiency of the evidence standard into alignment with the Jackson constitutional standard. I submit that we can no longer rely on Brown, at least not without factoring in Malik.[61]

---

[60]953 S.W.2d 234 (Tex. Crim. App. 1997).

[61]The majority believes that Bledsue is asking us to overrule Brown on the basis of Malik. Bledsue need not ask us to do so, because the holding in Brown was implicitly overruled by the Malik decision, i.e. the holding in Brown was based on the Benson/Boozer line of cases, which were explicitly overruled in Malik, rendering Brown (continued...)

### 4. Malik v. State

In Malik, the highest Texas court reexamined the Benson/Boozer line of cases, noting the inconsistencies caused by the longstanding rule that turns on whether the state or the defendant benefitted from the improper jury charge. To reiterate, if an indictment was facially complete but the jury charge required more proof than the indictment (and the state failed to object to its increased burden of proof), then under the Benson/Boozer line, sufficiency of the evidence was to be measured by the jury charge.[62] Conversely, if the indictment was facially complete but the jury charge required less proof than the indictment, then under the Benson/Boozer line, sufficiency of the evidence was to be measured by the indictment.[63]

Dissatisfied with the maze of complex rules for different situations, the Malik court concluded that the Benson/Boozer rule was actually at odds with the Jackson standard. The court recognized that although "[t]he Jackson standard was established to ensure that innocent persons

---

(...continued)
nugatory —— implicitly if not explicitly. And, again, Brown is truly inapposite to the instant circumstances.

[62]The Malik court noted that even if the indictment was facially incomplete, but consistent with the jury charge, sufficiency of the evidence is also measured by the jury charge. 953 S.W.2d at 239.

[63]Id.

would not be convicted," the Benson/Boozer rule permitted acquittals simply because the defendant received a windfall in the jury instructions —— a result directly at odds with the Jackson protection.[64]

To alleviate this inconsistency, the court in Malik held that "sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case."[65] Significantly, the court went on to define hypothetically correct jury charge as "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof, or unnecessarily restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried."[66] I fear that the majority opinion today has turned a blind eye toward the phrase "authorized by the indictment" in the Malik definition of a hypothetically correct jury charge. Indeed, my entire dissenting position hinges on this point: By omitting adulterants and dilutants (or a reference to the statute) from the indictment, a jury charge that includes them can never be correct, hypothetically or actually.

The majority discredits the analysis set forth by Malik, stating —— without citation or other support —— that the Malik

rule, like the Benson/Boozer line of cases, "does not reach the level of constitutional sufficiency required for federal habeas intervention." The majority concedes, however, that in many cases, "the Malik rule will produce an accurate list of the 'essential elements' that Jackson requires federal courts to review during habeas proceedings." Yet, it fails to acknowledge a situation like Bledsue's, in which the Malik rule does not comport with Jackson. The panel majority cites only to the language in Malik that the indictment is central to confecting the "hypothetically correct jury charge," but is not a dispositive measurement of sufficiency in cases when theories such as law of the parties or transferred intent are involved.[67] These legal theories of liability are not essential elements of the crime at issue in this case, so the indictment-based hypothetically correct jury charge is the appropriate mechanism for comparison.

Again, I find clear under Malik that the "hypothetically correct jury charge" must be "authorized by the indictment," signifying that we cannot disregard the indictment and look only to the statute. Using the Malik benchmark, the kind of technical violations

---

[64]Id.
[45]Id. at 240.
[46]Id. (emphasis added).

---

[67]See Johnson v. State, 982 S.W.2d 403, 409 (Tex. Crim. App. 1998) (en banc) (when applying Malik, noting that general principles of liability, such as transferred intent, need not be alleged in the indictment).

that concerned the <u>Brown</u> court and ended in unnecessary judgments of acquittal will be eliminated, and the state will consistently have to prove the elements in the indictment.[68] On the one hand, defendants like Brown, who had historically benefitted from an improper jury charge that required a <u>higher</u> level of proof for conviction, will no longer be acquitted on a technicality; on the other hand, defendants like Bledsue, who were convicted on an improper jury charge that allowed the state to prevail under a <u>lower</u> level of proof than the crime charged in the indictment, will be eligible for federal habeas relief. I agree wholeheartedly with the <u>Malik</u> court's observation that it has brought the Texas sufficiency of the evidence inquiry more in line with the <u>Jackson</u> standard to ensure that a judgment of acquittal will be reserved for those situations in which there is a failure in the state's constitutional burden of proof, rather than merely a technical violation.

It seems to me that the effect of the majority opinion is to allow the <u>Malik</u> court's

interpretation of <u>Jackson</u> to come in one juridical ear and go out the other. Ironically, the instant panel majority invokes federalism to justify denial of habeas relief at the same time that it unduly discounts a state common law principle that was created to further the goals of a federal constitutional sufficiency of the evidence analysis under <u>Jackson</u>. Another curiosity is the majority's expression of concern that "[p]ost-<u>Malik</u> . . . it is uncertain whether Texas courts would require that phrase [including adulterants or dilutants] in the indictment to convict Bledsue, because the old requirement of matching the jury charges and the indictment no longer exists."[69] Not to worry: The courts of Texas have continued to indicate that, for the state to cumulate the weight of additives with the

---

[48]<u>Cf.</u> <u>State v. Barrera</u>, 982 S.W.2d 415, 417 (Tex. Crim. App. 1998) (applying <u>Malik</u> and finding that the omission of self-defense in the application paragraph of the jury charge, even though it was adequately defined in the jury charge, was a technical violation of a state law rule, which did not affect a constitutional sufficiency of the evidence review).

---

[69]Although the majority addresses some of the cases decided post-<u>Malik</u>, it concludes that Bledsue's case is different "because the language of his indictment is ambiguous as to whether adulterants and dilutants are included in the alleged amphetamine possession." I find this conclusion astonishing. First, there is no ambiguity in Bledsue's indictment: It simply did not contain the phrase "adulterants or dilutants." Second, subsequent Texas cases have confirmed that the jury charge must conform to the indictment, even when a key element has been omitted from the indictment. <u>See</u> <u>infra</u> notes 47-48 and accompanying text.

weight of the pure drug so as to gain a conviction, the requirement that the statutory phrase must appear in the indictment does still exist.

In Harris v. State, for example, a Texas court of appeals applied the Malik standard to facts closely analogous to those of this case.[70] The defendant in Harris was convicted of aggravated assault of a peace officer. The defendant had been charged in an indictment that alleged the defendant "did then and there unlawfully, intentionally and knowingly cause bodily injury" to the officer. The jury charge, however, instructed the jury that "[a] person commits the offense of assault if he intentionally, knowingly or recklessly causes bodily injury to another," thereby permitting a conviction on a theory broader — and thus less burdensome to the state — than the one alleged in the indictment. Even though the specific language of the statute under which the defendant was indicted contained the element of recklessness, the court held that the essential elements of the offense must appear in the indictment; its presence in the statute alone is not sufficient. Thus, a Malik hypothetically correct jury charge could not include recklessness, and, as a result, recklessness could not sustain

a conviction.[71]

In like manner, even though the statute under which Bledsue was convicted clearly allowed the inclusion of adulterants and dilutants in calculating the total weight of the amphetamine, this element was omitted from his indictment, as drawn for the grand jury by the prosecution. Analogous to Harris, the essential elements of Bledsue's offense are those specified in the indictment — here, "pure" amphetamine only — and, because the state did not prove one of the essential elements of the indictment's offense (as distinct from a mere theory of responsibility) beyond a reasonable doubt, i.e., possession of 28-400 grams of unadulterated amphetamine, exclusive of the indictment-omitted additives, Bledsue is entitled to habeas corpus relief.

In Pizzini v. State, another Texas court confirmed this reading of Malik by stating, "[w]e do not read Malik so broadly... we must conclude that the hypothetically correct jury charge contemplated in Malik is based on the indictment as returned by the grand jury. Accordingly, Malik may not be used to release the state from its burden of proving each element of the offense as charged in the indictment."[72]

_____

[70]1999 WL 441839 (Tex. Ct. App. July 1, 1999) (unpublished).

[71]Id. at *2-4.

[72]1998 WL 635306, *2 (Tex. Ct. App. Sept. 16, 1998)(emphasis added); see also Williams v. State, 980 S.W.2d 222, 224-25 n.2 (Tex. Ct. App. 1998) ("[A] hypothetically (continued...)

Jackson requires us to evaluate the elements of the offense under state law; and Texas law —— both before and after Malik —— mandates that, for purposes of constitutional sufficiency, the essential elements of the offense are those contained in the indictment. It therefore follows inescapably that the standard announced in Malik, as contemplated in that decision and consistently applied by the Texas courts of appeal ever since, is aligned with the Jackson standard and must be considered in a sufficiency of the evidence review.

C.    Merits of the Case

Using the Malik standard as my yardstick, I now test for constitutional sufficiency the evidence produced by the state to convict Bledsue on the allegations in a hypothetically correct jury charge as authorized by, inter alia, the indictment. The indictment alleged possession of at least 28 grams of amphetamine —— no mention of adulterants or dilutant; no mention of the criminal statute. Thus, a hypothetically correct jury instruction would not allow the weight of the adulterants and dilutants to be considered in calculating the weight of the amphetamine possessed. At trial, the state's expert witness testified that Bledsue possessed at most 17 grams of pure amphetamine. Because, as a matter of law, the state did not and could not prove beyond a reasonable doubt one of the essential elements of the indictment —— 28 grams or more of the substance (pure amphetamine) possessed —— I would affirm the district court's grant of habeas relief based on its holding that Bledsue's conviction is unconstitutional under the standard espoused in Jackson. The majority's minimizing of the Malik standard by labeling it a Brown procedural nuance (thus undeserving of constitutional scrutiny) is one reason why I must respectfully dissent.

D.    Essential Elements

(...continued)
correct jury charge must reflect the elements of a criminal offense as set out in the indictment.")(emphasis added).

30

Declining to adopt the <u>Malik</u> rule, the majority, in its final step, addresses whether "adulterants and dilutants" constitute essential elements under <u>Jackson</u> such that they must be charged in the indictment. The majority sought guidance from the Supreme Court's teachings in <u>Jones v. United States</u>,[73] a case in which the structure of a criminal statute was examined to find that the increased level of harm suffered by the victim, <u>i.e.</u>, bodily injury or death, was an essential element of the offense to be decided by a jury. The Court noted that "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt."[74] Based on the similarities between the statute in <u>Jones</u> and the statute at hand, the majority correctly describes the Texas statute as defining three separate offenses, rather than one offense with three separate punishments.

I perceive, however, an inherent flaw in the position that the majority opinion subsequently advances. It attempts to distinguish between the amount of amphetamine possessed — which it deems an

---

[73]119 S. Ct. 1215 (1999).

[74]<u>Id.</u> at 1224 n.6; <u>see also</u> <u>United States v. Davis</u>, 1999 WL 496519 (4th Cir. July 13, 1999) (relying on <u>Jones</u>, vacating Davis's sentence because "great bodily injury" was not charged in the indictment).

31

element of the offense —— and the phrase "adulterants and dilutants," which it claims is <u>not</u> an element of the offense. Because "adulterants and dilutants" are included in each separate crime under the statute to calculate the amount possessed, goes the majority's reasoning, Bledsue could not have been convicted of possessing less than 28 grams of amphetamine. It is from this thesis that the majority concludes that "adulterants and dilutants" cannot be an element of the offense of conviction.

Not only do I perceive this argument as patently circular, I find it to be a classic non sequitur. The majority concedes that the <u>amount</u> of controlled substance possessed is an element of Bledsue's offense but in the same breath insists that "adulterants and dilutants" do not affect the <u>total amount</u> of the controlled substance possessed; that the crime, as expressed in the statute, describes the weight of the controlled substance as including adulterants and dilutants. But, the majority fails to account for the indictment's omission of adulterants and dilutants when it fails to track or identify the statute. As these two substances —— (1) pure drugs and (2) additives —— are inextricably intertwined, I can neither accept nor understand the majority's proposition. In fact, the majority states, "[e]ach of the three offenses in the statute <u>describes the amount</u> of the controlled substance <u>as</u> "<u>including adulterants and dilutants</u>." This exercise of semantically chasing one's tail demonstrates

the logical fallacy in the majority's position. More importantly, it continues to ignore what the indictment actually said, and, more significantly, what it did not say.

Additionally, the majority's conclusion that Bledsue could not have been convicted of possessing less than 28 grams of amphetamines can only follow if sufficiency of the evidence is measured by the <u>statute alone</u> or by the <u>jury charge alone</u>, both of which include "adulterants and dilutants." But, if sufficiency of the evidence considers the statute only as expressly incorporated into the indictment —— as, I am convinced, it must —— then Bledsue undeniably could have been convicted of possessing less than 28 grams of amphetamine —— 17 grams to be exact.

Finally, to say that "adulterants and dilutants" are not essential elements because they are always included in the offense is both illogical and unsupported. The elements of "possession" and "weight of amphetamines" are always included in the offense as well, but that would not excuse their omission from the indictment. I can neither understand nor reconcile the majority's position that under <u>Jones</u>, adulterants and dilutants are not essential elements of the offense. Clearly, "adulterants and dilutants" can dramatically affect the weight of the amphetamine proved by the state to have been possessed by the defendant and can thus increase the defendant's penalty: That is precisely what has occurred

here. This is an additional reason why I must respectfully dissent —— unless, of course, the error can be found to be harmless. Thus, one more step is required.

E. Harmless Error Analysis

To take my thesis to its necessary legal conclusion, I must address one final hurdle raised by the state: harmless error. As a writ of habeas corpus is not necessarily granted in every instance in which the state has failed to conform to constitutional requirements, my conclusion that Jackson has not been satisfied does not fully complete this inquiry.[75] Before habeas relief can be granted, Bledsue must establish that he suffered prejudice as a result of the variance between the jury charge and the indictment.[76] In its brief and in oral argument, the state insisted that Bledsue could not successfully demonstrate prejudice because (1) he would have been convicted under the lesser included offense of "less than 28 grams," and (2) for Bledsue, that lesser offense carries the same punishment range as does the greater offense of which he was convicted. Accordingly, urges the state, any error is harmless.

As with the majority opinion's reasoning, I perceive a fatal flaw in the state's logic as well. Even though the state is correct in observing that a conviction under either the "28 grams or more" aggravated felony or the "less than 28 grams" third degree felony would carry the same punishment range for Bledsue —— 25 to 99 years or life imprisonment —— it does not follow that the jury would necessarily have assessed the same punishment within that range.[77] During the sentencing phase of trial, the jury assessed punishment at life imprisonment based on two prior convictions and the present conviction for an "aggravated felony" —— the second "tier" of the punishment scheme of the statute that is based on weight. That second tier —— reserved for aggravated felonies —— is clearly meant to punish more heinous drug crimes than the first tier's third degree, "under 28 grams," felonies, obviously a less egregious, minimal quantity crime. The jury, which had found Bledsue guilty of the greater aggregate weight, was instructed that it could sentence Bledsue for any term between 25 and 99 years or that it could impose life imprisonment; and the jury chose life imprisonment.

The state urges that "[t]here is no reason to believe that the jury would have been more forgiving in sentencing Bledsue

---

[55]Brown, 937 F.2d at 182; Clark v. Maggio, 737 F.2d 471, 475 (5th Cir. 1984), cert. denied, 470 U.S. 1055 (1985).
[76]Brown, 937 F.2d at 182.

[57]Cf. id. at 182-83 (finding no prejudice because the sentence for the lesser included offense was exactly the same as the sentence imposed on the defendant); Clark, 737 F.2d at 475-76 (same).

33

for seventeen grams of pure amphetamine rather than more than 28 grams of diluted amphetamine." This is a classic mis-characterization of an issue: The correct question to ask in this harmless error analysis is whether there is at least a realistic possibility that a jury might be less inclined to assess the statutory maximum — life in prison — for the minimal, first-tier, third degree felony than for the more egregious, second-tier aggravated felony. To me the obvious answer is "Yes." Moreover, the state's reasoning cuts both ways: There is no reason to believe that the jury would have imposed the identical, statutory maximum sentence when dealing with a conviction on the lower grade felony, as a lesser included offense at that, particularly when armed with the knowledge that the more heinous aggravated felony carries the same maximum as the "entry level" third degree crime.[78]

I deem worth highlighting for analogical purposes the different treatment given under Texas law to a first-time offender who commits an "aggravated" felony, as compared to the treatment given to a first offender for a "third degree" felony. An aggravated felony — in this case the "28 grams or more" count — carries, for a first offender, a punishment range of 5 to 99 years or life and a maximum fine of $50,000. In contrast, a third degree felony — in this case the "less than 28 grams" count — carries, for a first offender, a punishment range of only 2 to 10 years and a maximum fine of $10,000. A reasonable jury could not help but note the fact that the possibility of an additional 79 years or life in prison and an additional $40,000 in fines reflects a public policy, as expressed by the legislature, that an aggravated felony is substantially more egregious than a third degree felony in the Texas criminal pantheon. Although these penalty ranges apply only to first time offenders, of which Bledsue admittedly is not one, I infer

---

[58]In the context of the United States Sentencing Guidelines, it is clear that misapplication of a guideline is only harmless error if the district court would have imposed the exact same sentence, even in the absence of the error. Williams v. U.S., 503 U.S. 193, 203 (1992). The fact that the district court could have chosen the same sentence is immaterial. See U.S. v. Tello, 9 F.3d 1119, 1131 (5th Cir. 1993) (holding that application of the wrong sentencing range is not harmless error even when the
(continued...)

(...continued)
same sentence was available under the correct sentencing range); U.S. v. Huskey, 137 F.3d 283, 289-90 (5th Cir. 1998) (refusing to find harmless error because the government could not prove that the district court would have chosen the exact same sentence); U.S. v. Rogers, 126 F.3d 655, 661 (5th Cir. 1997) (same); U.S. v. Surasky, 976 F.2d 242, 248 (5th Cir. 1992).

34

guidance from the Texas Legislature's treatment of these offenses and can see how a jury would be likely to make the same analogical distinction when enlightened by an able defense lawyer. Additionally, given that Bledsue's prior offenses were felony theft and unlawful carrying of a weapon on licensed premises, this was his first <u>drug</u> conviction. That a defendant is found guilty of the least criminal quantity range of amphetamine possession that is punishable by law <u>and</u> that it is his first drug offense might very well lead a jury to assess a lower sentence, almost certainly less than life imprisonment.

In sum, we should sit neither as a transcendental jury nor as an oracle predicting what a jury would decide when theoretically sentencing one convicted of a "third-degree" felony rather than an "aggravated" felony, with the difference dictated explicitly and solely by quantity. This should be decided by another jury on another day — if it is to be decided at all. I find it self-evident, though, that in the sentencing context a conviction based on insufficient evidence of the quantity of amphetamine possessed would be prejudicial to any habeas petitioner under the instant facts and applicable law.

I therefore conclude that Bledsue has demonstrated sufficient prejudice in the discrepancy between his indictment and the jury charge, and the substantially different nature of the lesser included offense, to remove his case from the realm of harmless error. I agree with the recommendation of the district court and would affirm its reversal of Bledsue's conviction on the charge of possession of amphetamine in a quantity of 28 grams or more, allowing the state 120 days in which to retry Bledsue on the lesser included offense of possession of less than 28 grams, should the state elect to do so.

## III.
### CONCLUSION

I am deeply troubled by the majority's treatment of the Fourteenth Amendment's fundamental due process guarantee that every individual — regardless of factual culpability — shall be free from conviction except on proof beyond a reasonable doubt of the crime of which he is charged. By mandate of the Supreme Court, we have been given explicit rules under which to measure sufficiency of the evidence on habeas when questioning a state conviction, most notably the reference to state law for the substantive definition of the elements of the criminal offense. With its focus limited narrowly to the statute only, however, the majority disregards an essential element of state law — ingrained in the Common Law of Texas for almost 20 years — that the state must include the key phrase "including adulterants or dilutants" in the indictment if the weight of those additives are to be relied on by the state in proving the essential element of weight.

By diminutively terming this discrepancy between the indictment and the jury charge

a "procedural nuance," the majority condones sloppiness at best and sophistry and deception at worst, in the actions of the state prosecutor.[79] The state in this case benefitted from its own omission in the inconsistency between the indictment and the jury charge, condemning Bledsue to a life behind bars for committing a crime of which he was never indicted. I hasten to add that I should not be misunderstood to advocate a blanket review of state court convictions, as it should be with great reluctance that any federal court intrudes on the finality of a state's disposition of such cases. But we must not forget that we are in all likelihood the final arbiter between Bledsue's guarantee of due process and the state's interest in prosecuting criminals. Absent consideration of the Texas common law rule that examines the variance between the <u>indictment</u> and the <u>jury charge</u> which, I might add, is aligned with the federal constitutional standard, Bledsue's due process rights to a fundamental fair trial have been abrogated, first by the state conviction and now by the majority's reversal of the federal district court's grant of habeas relief — which I would affirm. For these reasons, I respectfully dissent.

---

[79]For example, in Bledsue's case, the indictment not only left out the phrase "adulterants or dilutants," but failed to mention the statute under which Bledsue was convicted.